Gwendolyn RIKARD and Stacy Dino Darnell *v.*
STATE of Arkansas

CR 03-54                                      123 S.W.3d 114

Supreme Court of Arkansas
Opinion delivered October 9, 2003

*Lohnes T. Tiner*, for appellants.

*Mike Beebe*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

R OBERT L. BROWN, Justice. Appellants Gwendolyn Rikard and Stacy Dino Darnell appeal from their convictions for drug-related offenses. Rikard was sentenced to 120 months' probation for possession of a controlled substance, methamphetamine, and Darnell was sentenced to 126 months' imprisonment for simultaneous possession of drugs and firearms followed by five years' suspended imposition of sentence. Both appellants entered conditional pleas of guilty in which they reserved the right to appeal the denial of their motion to suppress evidence under Ark. R. Crim. P. 24.3(b). Their sole point on appeal is that the circuit court erred in failing to suppress evidence seized from their garbage container. We disagree with the appellants' assertion of error and affirm the circuit court.

On March 11, 2002, the Craighead County Circuit Court issued a search warrant for the residence of Rikard and Darnell in Jonesboro, based on an affidavit filed by Investigator Jerry Roth of the Craighead County Sheriff's Department. Investigator Roth's affidavit revealed that on two separate occasions, January 29, 2002, and March 10, 2002, law enforcement officers had removed trash from the appellants' garbage can which had been placed at the curb in front of their residence. Investigator Roth disclosed that on both occasions, papers with Darnell's name on them as well as items typically associated with the use or manufacture of crystal methamphetamine were found. Specifically, the affidavit stated that on January 29, 2002, a search of the trash revealed:

> papers with the name Stacy Dino Darnell on them, paper filters containing suspected crystal methamphetamine or pseudo-ephedrine residue, strips of foil with suspected burnt crystal methamphetamine residue, a glass pipe containing suspected crystal methamphetamine residue, plastic bags with corners cut out.

The affidavit also stated that the March 10, 2002 search of appellants' trash revealed:

> papers with the name Stacy Dino Darnell on them, numerous used syringes, strips of foil with burnt residue, coffee filters containing suspected crystal methamphetamine, numerous plastic bags with corners cut out, empty coleman fuel can, empty bottle of drain opener, and a punched starter fluid can.

The affidavit further set out that appellants' residence had been under periodic surveillance for several months, and that in the past year, police officers had obtained unsubstantiated information that Darnell was manufacturing crystal meth at both his residence and place of business. The police officers had also received information that Darnell had a large number of firearms at his residence and carried a handgun on his person. Additionally, the officers had observed a number of vehicles at the residence and had reason to believe that a person currently on probation for a drug-and-weapon offense and his girlfriend were living with the appellants.

The search warrant was executed, and the return revealed that the following items were seized: eight handguns, one rifle, over twenty grams of suspected crystal methamphetamine, $7,127 in cash, and various drugs and items of drug paraphernalia, including, but not limited to, bags of suspected marijuana, needles and syringes, a "hitter," two boxes of ephedrine pills, plastic baggies, bags of suspected methamphetamine, and a glass "bong."

On September 5, 2002, the appellants moved to suppress the seized items. They argued that the search warrant was premised on prior, warrantless searches of their trash, and they asserted that the search of their trash violated Jonesboro city ordinances and their expectation of privacy. Thus, they contended, the suppression of the evidence obtained by the warrantless searches made the search warrant invalid.

The circuit court held a hearing on the motion to suppress, and after listening to testimony and arguments of counsel, made the following ruling:

> . . .When you use the word trash, how — how do we define trash? It's — it is refuse. It — it's abandoned property. It's property that people no longer have any use for and discard. And I would suggest that the [*California v.*] *Greenwood*[, 486 U.S. 42 (1988),] case is still appropriate and should be the law in Arkansas because there is no reasonable expectation of privacy in one's trash. If you choose to keep those items private and free from search, then they shouldn't be placed in a trash receptacle.
>
> These cases talked about opaque bags and, of course, most garbage bags today are traditionally dark and black, and you can't see through them, and they make a big to-do about whether or not that

was any grant of privacy for the contents. And I suggest to you when you place things in those bags and throw 'em out for some stranger to pick up and haul away and dispose of, you're just subjecting them to the world. You're abandoning that property. You're giving it up. And there is no reasonable expectation of privacy in trash and refuse. If you put it in a refuse bag and put it on the street, it's fair game — not only for small animals and children — but police officers and anyone else that might go through it.

The *Oliver* [*v. United States*, 466 U.S. 170 (1984),] case answers the question to me as to whether or not a violation of a city ordinance had any significance, and I think in this case it had none whatsoever. And that's my ruling.

The court then accepted conditional pleas of guilty from each appellant. On September 16, 2002, judgment and commitment orders were entered for each appellant. Orders denying the appellants' motion to suppress were entered September 18, 2002.

Appellants now contend in this appeal that the circuit court erred in failing to suppress items seized from their residence because the search warrant was the result of an illegal search of their garbage container. In support of their argument, they contend that the United States Supreme Court's decision in *California v. Greenwood, supra,* holding that there is no reasonable expectation of privacy with regard to items discarded in garbage bags left on or at the side of a public street, is limited in its application. Moreover, they urge this court to find a greater expectation of privacy in trash under the Arkansas Constitution than that afforded by the United States Constitution. They further contend that because Jonesboro city ordinances existed, which prohibited "scavenging and salvaging" others' trash at the time their garbage containers were searched, they had a reasonable expectation in the privacy of their trash. They assert, in addition, that their garbage containers were located within the curtilage of their residence and, therefore, were protected from unreasonable searches and seizures. They also maintain that under the Arkansas Rules of Criminal Procedure, there was no justification for the search of either their garbage containers, or the subsequent seizure of evidence. Finally, they claim that the "good faith" exception regarding the police investigators should not apply because the affidavit lacked a substantial basis for determining the existence of probable cause.

■ We begin our analysis by identifying our standard of review for warrantless searches. We recently set out that standard in *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003):

> [W]e conduct a *de novo* review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court.

351 Ark. at 413, 94 S.W.3d at 896 (internal citations omitted).

With this standard of review in mind, we turn to the merits of the case. The appellants take issue with the search of their garbage which was used to provide a basis for the search warrant which, in turn, led to the search of their residence and their arrests. They contend that they had a reasonable expectation of privacy in their garbage. Despite their contention, the United States Supreme Court has already determined that this is not the case with respect to claims for suppression under the Fourth Amendment of the Unites States Constitution. *See California v. Greenwood*, 486 U.S. 35 (1988). In *Greenwood*, as noted by the circuit court in the instant case, the Court specifically addressed whether the Fourth Amendment prohibits the warrantless search and seizure of garbage sacks left for collection outside the curtilage of a home. The Court held that the Fourth Amendment does not.

The facts in *Greenwood* are much like those in the case at hand. A police investigator received a tip that Greenwood might be engaged in narcotics trafficking. The investigator conducted surveillance on the home and observed several vehicles making brief stops during the late-night and early-morning hours. As a result, the investigator asked the garbage collector to collect Greenwood's trash without mixing it with the other garbage and to hold it for her. Receiving the garbage from the collector, the investigator "found items indicative of narcotics use." 486 U.S. at 38. She then used the information obtained from her search of the trash to obtain a warrant to search Greenwood's home, following which, Greenwood and another respondent were arrested. After posting bail, the police continued to receive information that the Greenwood home was having late-night visitors. Garbage was again collected from the home by another investigator which again contained evidence of drug use. A second search warrant was

obtained on the basis of the second trash search, and Greenwood was again arrested after police officers found more drugs and evidence of drug trafficking.

■ The Court held that the warrantless search and seizure of Greenwood's garbage bags that were left at the curb "would violate the Fourth Amendment only if respondents manifested a subjective expectation of privacy in their garbage that society accepts as objectively reasonable." *Id.* at 39. The Court continued:

> Here, we conclude that respondents exposed their garbage to the public sufficiently to defeat their claim to Fourth Amendment protection. It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public. *See Krivda, supra,* 5 Cal. 3d at 367, 96 Cal. Rptr. at 69, 486 P.2d at 1269. Moreover, respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so. Accordingly, having deposited their garbage "in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it," *United States v. Reicherter,* 647 F.2d 397, 399 (3d Cir. 1981), respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded.
>
> Furthermore, as we have held, the police cannot reasonably be expected to avert their eyes from evidence of criminal activity that could have been observed by any member of the public. Hence, "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States, supra,* 389 U.S. at 351, 88 S. Ct. at 511. We held in *Smith v. Maryland,* 442 U.S. 735, 99 S. Ct. 2577, 61 L. Ed. 2d 220 (1979), for example, that the police did not violate the Fourth Amendment by causing a pen register to be installed at the telephone company's offices to record the telephone numbers dialed by a criminal suspect. An individual has no legitimate expectation of privacy in the numbers dialed on his telephone, we reasoned, because he voluntarily conveys those numbers to the telephone company when he uses the telephone. Again, we observed that "a

person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Id.* at 743-744, 99 S. Ct. at 2582.

*Id.* at 40-41 (footnotes omitted). The *Greenwood* decision is the Court's definitive statement regarding appellants' Fourth Amendment claims. We hold that the appellants are afforded no relief under the Fourth Amendment.

Nevertheless, the appellants advance the theory that they should be entitled to relief under Article 2, Section 15, of the Arkansas Constitution. That section provides:

> The right of the people of this State to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized.

Ark. Const. art. 2, § 15.

This court has recently imposed greater restrictions on police activities than the United States Constitution in three cases based on our own state law. *See, e.g., Jegley v. Picado*, 349 Ark. 600, 80 S.W.3d 332 (2002) (sodomy statute infringes on right to privacy under various sections of Arkansas Constitution); *State v. Sullivan*, 348 Ark. 647, 74 S.W.3d 215 (2002) (pretextual arrest illegal under Art. 2, § 15, of Arkansas Constitution); *Griffin v. State*, 347 Ark. 788, 67 S.W.3d 582 (2002) (nighttime incursions on a defendant's curtilage illegal under Art. 2, § 15, of Arkansas Constitution). Despite doing so, this court noted in *Sullivan*, that "there are occasions and contexts in which federal Fourth Amendment interpretation provides adequate protections against unreasonable law enforcement conduct; however, there are also occasions when this court will provide more protection under the Arkansas Constitution than that provided by the federal courts." 348 Ark. at 652, 74 S.W.3d at 218. Furthermore, we observed in *Sullivan* that one "pivotal inquiry" is "whether this court has traditionally viewed an issue differently than the federal courts." *Id.*, 74 S.W.3d at 218.

In *Jegley v. Picado, supra,* we observed that a fundamental right to privacy was implicit under four sections of the Arkansas Constitution as well as under our statutes, rules, and caselaw. Similarly, in *Griffin v. State, supra,* we traced the rich tradition in our various state constitutions, criminal rules, and caselaw of protecting against unreasonable nighttime searches of a home. And in *State v. Sullivan, supra,* we focused on whether this court in its caselaw had viewed pretextual arrests differently from its federal counterparts. We concluded that for more than two decades we had.

█ In the instant case, however, we conclude that this court has not traditionally viewed a warrantless search of items such as one's trash or garbage differently from the federal courts. An example of our general symmetry with the federal courts can be found in *Rainey v. Hartness,* 339 Ark. 293, 5 S.W.3d 410 (1999). In *Rainey,* this court examined whether a wildlife officer's actions in climbing a ladder up to a hunter's deer stand and seizing a rifle violated the Fourth Amendment or Art. 2, § 15, of the Arkansas Constitution.[1] The appellants argued that they had a legitimate expectation of privacy in the hunter's stand. Noting the distinct similarities between the two constitutional provisions, the Fourth Amendment of the United States Constitution and Art. 2, § 15, of the Arkansas Constitution, this court analyzed the appellants' claims under federal case law. We first observed: "A person who knowingly exposes an object to the public cannot expect the protection from unreasonable search and seizure provided by the Fourth Amendment." *Rainey,* 339 Ark. at 301, 5 S.W.3d at 416 (citing *Webster v. State,* 300 Ark. 169, 777 S.W.2d 849 (1989) (citing *Katz v. United States,* 389 U.S. 347 (1967)).

We then noted, using some of the same language employed by the United States Supreme Court in *California v. Greenwood, supra:*

> . . . There was no evidence that the structure was inaccessible to other persons (*i.e.,* that the hatch door was locked or that the ladder was removed whenever he was not using the stand), only Harton's claim that it was not open to use by other persons unless he invited them. Accordingly, there was a "theoretical possibility" that "ani-

---

[1] This court did so as part of its inquiry into whether the wildlife officer was entitled to qualified immunity.

mals, children, scavengers, snoops, and other members of the public" would happen onto the stand, thus rendering any claimed expectation of privacy objectively unreasonable.

339 Ark. at 302, 5 S.W.3d at 416 (internal citations omitted). We ultimately concluded that the wildlife officer's conduct did not violate the appellants' constitutional rights; thus, he was entitled to qualified immunity from appellants' civil-rights claims.

■ Because a review of our case law reveals that this court has not traditionally viewed searches of this ilk differently from the federal courts, we conclude that the Fourth Amendment analysis under *California v. Greenwood, supra*, provides adequate protection against searches of a garbage container left at the curb of one's residence. Our interpretation is in accord with the majority of jurisdictions as noted in American Law Reports:

> . . . The vast majority of courts have ruled that when garbage is located in a place accessible to the public, the individual who placed that garbage for collection either abandoned it or has no reasonable expectation of privacy therein, thus rendering any search and seizure of that trash lawful.

Kimberly J. Winbush, *Searches and Seizures: Reasonable Expectation of Privacy in Contents of Garbage or Trash Receptacle*, 62 A.L.R. 5th 1 (1998). *But see State v. Boland*, 115 Wash. 2d 571, 800 P.2d 1112 (1990) (holding that police search of Boland's trash constituted an unreasonable intrusion into his "private affairs" which was prohibited by Washington Constitution).

We turn next to appellants' claim that the Jonesboro city ordinances gave them a reasonable expectation of privacy in their garbage placed out on the curb. The appellants submit the following ordinances in support of their argument:

SCAVENGING AND SALVAGING

1. Persons found scavenging any solid waste material from within collection or transport trucks, the landfill, or from within any residential or commercial containers shall be in violation of these rules and regulations.

2. It shall be a violation of these rules and regulations for any person(s) not designated by the Sanitation Department to remove or interfere with a recycling container or it's [sic] contents.

. . . .

## DISTURBING CONTENTS OF CONTAINERS

1. It shall be a violation for any person not authorized by the City to utilize, for other than its intended purpose, any container provided by the City.

2. Any person not authorized by the responsible party to remove, collect or disturb any solid waste stored in containers placed out for collection by the City or its designee.

3. Any person to scatter, litter, drop, deposit, discard or otherwise dispose of solid waste upon any private or public property.

4. Any person not authorized by the City to remove or disturb any recyclables placed out for collection by the City or its designee.

. . . .

5.16.06 Interfering with garbage receptacles. It shall be unlawful for any person other than the garbage collector, person owning the can or other receptacle, or the servant or employee of such person to deposit any garbage, article or substance in the receptacle or to remove, injure or destroy, uncover or in any manner disturb such receptacle or any portion of its contents, except as herein provided. (Ord. No. 778, Sec. 4, 11-22-48, Ord. No. 826, Sec. 1, 3-5-51)

We disagree.

Several courts in other states have already examined the impact a city ordinance regulating waste management has in determining any privacy interest of the owner in garbage set outside for collection. *See generally* Kimberly J. Winbush, *Searches and Seizures: Reasonable Expectation of Privacy in Contents of Garbage or Trash Receptacle, supra.* Notably, in *Commonwealth v. Minton*, 288 Pa. Super. 381, 432 A.2d 212 (1981), the Pennsylvania Superior Court held that although there was a section of the township code which

prohibited any person other than the occupant from "remov[ing] covers of [sic] any of the contents of the refuse receptacles," the code section was similar to one involved in another case in which a different court held that the purpose of such an ordinance was "presumably sanitation and cleanliness not privacy." 288 Pa. Super. at 391-92, 432 A.2d at 217. Likewise, in *Commonwealth v. Pratt*, 407 Mass. 647, 555 S.E.2d 559 (1990), the Massachusetts Supreme Court held that an ordinance permitting only licensed trash collectors to transport garbage did not create a privacy right:

> The fact that an Essex ordinance allowed only licensed trash collectors to transport garbage does not make the defendant's subjective expectation of privacy any more reasonable. The licensed collectors may have rummaged through the defendant's garbage themselves. Secondly, once the defendant knew that the garbage would be picked up by licensed collectors and deposited at the local landfill, he should have known that others could gain access to the garbage.

407 Mass. at 660, 555 N.E.2d at 567.

■ We find the analysis of these two courts to be persuasive. Without question, the Jonesboro city ordinances were not created to provide citizens with an expectation of privacy in their garbage. Rather, the intent of the ordinance undoubtedly was to provide a city-wide system for waste management and sanitation services, with an emphasis on cleanliness and preventing any scattering of that garbage.

■ ■ This intent was further clarified by a subsequent amendment to Jonesboro Ordinance 5.16.06, which occurred on October 21, 2002, and which exempted law enforcement officers from the dictates of the ordinance, while performing their duties. This court has held that although it is hesitant to interpret a legislative act in a manner contrary to its express language, it may do so when it is clear that a drafting error or omission circumvents legislative intent. *See, e.g., Rosario v. State*, 319 Ark. 764, 894 S.W.2d 888 (1995). To that end, this court has acknowledged that subsequent amendments to a statute may be helpful in determining legislative intent. *See id.* The same holds true of city ordinances. We cannot say that the city ordinance that was in effect at the time of the search of appellants' garbage was intended to prohibit police officers from examining trash in the performance of their duties.

Nor was it intended to give citizens an expectation of privacy in their discarded and abandoned trash. Appellants' arguments in this regard are without merit.

▇ We note on this point that the United States Supreme Court touched on an analogous situation in *California v. Greenwood, supra*. There, the question was whether a particular state law governed whether a search was reasonable under the Fourth Amendment. The Court answered the question in the negative and said:

> ... We have never intimated, however, that whether or not a search is reasonable within the meaning of the Fourth Amendment depends on the law of the particular State in which the search occurs. We have emphasized instead that the Fourth Amendment analysis must turn on such factors as "our *societal* understanding that certain areas deserve the most scrupulous protection from government invasion." We have already concluded that society as a whole possesses no such understanding with regard to garbage left for collection at the side of a public street. Respondent's argument is no less than a suggestion that concepts of privacy under the laws of each State are to determine the reach of the Fourth Amendment. We do not accept this submission.

486 U.S. at 43-44 (emphasis in original). The same rationale is equally true regarding whether a particular city ordinance such as Jonesboro's can render a search reasonable under the Arkansas Constitution. Were that the case, constitutional rights could vary from city to city depending on local laws in place. That would run directly contrary to a pronouncement by this court of a uniform societal understanding relating to privacy rights in garbage which is based on the Arkansas Constitution and which is applicable to the state as a whole.

The appellants finally contend that the removal of their garbage containers constituted a search and seizure under Rule 10 of the Arkansas Rules of Criminal Procedure. They assert that because the police officers' actions were punishable under the Jonesboro city ordinances, their actions constituted a nonconsensual and warrantless search under our criminal rules.

▇ We conclude that this point is not preserved for our review. This court has consistently held that it will not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing argument in support of it

and when it is not apparent without further research that the argument is well taken. *See, e.g., Stivers v. State*, 354 Ark. 140, 118 S.W.3d 558 (Sept. 25, 2003). In the instant case, the appellants merely cite to the rules but otherwise have failed to develop their argument. In particular, they have failed to cite this court to any authority supporting their premise. We further cannot find in the record where the circuit court ruled on this particular point. That, of course, is fatal to an appeal of the issue. *See Terry v. State*, 309 Ark. 64, 826 S.W.2d 817 (1992). For these reasons, we affirm on this point as well.

As a final point, the investigating officers in this case never testified that they went onto the appellants' property. Rather, they testified that they obtained trash from the garbage container, which was sitting on the curb, by standing in the street. The circuit court clearly credited the officers' testimony. The appellants' curtilage argument is meritless as well.

Affirmed.

THORNTON, J., not participating.