Harvey MORRIS and Donna Morris *v.* STATE of Arkansas

CA CR 03-729                                     161 S.W.3d 314

Court of Appeals of Arkansas
Division IV
Opinion delivered April 28, 2004

*Miller Law Firm* (Little Rock), by: *Leslie Borgognoni*; and *Miller Law Firm* (Jonesboro), by: *Randel Miller*, for appellants.

*Mike Beebe*, Att'y Gen., by: *Brent P. Gasper*, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge. A jury found appellants, Harvey Morris and Donna Morris, guilty of the crimes of possession of drug paraphernalia with the intent to use and simultaneous possession of a controlled substance and a firearm. Mr. Morris and Ms. Morris were sentenced to 168 months and 120 months of imprisonment respectively on the simultaneous–possession charge. Both were fined $2,500 on the drug-paraphernalia charge.[1] On appeal, Ms. Morris challenges the sufficiency of the evidence to support her conviction for simultaneous possession of a controlled substance and a firearm. Further, both appellants argue that the circuit court erred in refusing to suppress evidence seized from their residence pursuant to a search warrant. Citing Article 2, Section 15, of the Arkansas Constitution, they argue that the search was illegal because the search warrant was based on evidence taken during an illegal

---

[1] The circuit court did not sentence either appellant on the jury's finding that they also committed the crime of possession of marijuana with the intent to deliver.

warrantless search and seizure of appellants' trash, which they had set out for pickup by a trash-collection service. We affirm.

■ Ms. Morris first challenges the sufficiency of the evidence to support her conviction for simultaneous possession of a controlled substance and a firearm. In reviewing a challenge to the sufficiency of the evidence, we affirm if, viewing the evidence in the light most favorable to the State, there is substantial evidence to support the conviction. *Gilbert v. State*, 341 Ark. 601, 19 S.W.3d 595 (2000). Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resort to speculation or conjecture. *Id*.

The facts are as follows: Pursuant to a search warrant, law-enforcement officers conducted a search of appellants' residence. Mr. Morris and appellants' son were outside when the officers arrived; Ms. Morris exited the residence prior to the officers' entry. While searching appellants' bedroom, which appellants shared, officers found digital scales and approximately one pound of marijuana underneath appellants' bed. A loaded .44 caliber Smith & Wesson revolver in a holster was found in the third drawer of a dresser that was two feet away from the marijuana and scales. One bag of marijuana was recovered from the top dresser drawer and a second bag was recovered from the second drawer. Scales and plastic sandwich bags were found on top of the dresser. In the area below the bottom dresser drawer, officers found a canister containing $20,000, which was one foot or two feet away from the marijuana and scales. A booklet with two $500 bills inside was also found there. A shoe in the bedroom closet contained $5,000, and an arrow quiver by the dresser held $5,000. Mr. Morris had $11,860 in his possession. Two coolers with marijuana residue were also found in the bedroom, and dried marijuana leaves were found in the attic. Other loaded and unloaded firearms were discovered in a locked gun cabinet in the bedroom. Mr. Morris gave the officers the key to the cabinet. Two unloaded firearms were located behind a door in the bedroom. Drug paraphernalia for smoking marijuana was found under a couch in the living room and in the kitchen. Officers also found a radio scanner tuned to police frequencies.

Ms. Morris testified that she smoked marijuana she received from Mr. Morris. She stated that she did not know how much marijuana Mr. Morris purchased on each occasion. She testified

that he had purchased one pound in the past year because "he got a deal on it." She stated, however, that she did not know about the large quantity of marijuana found by the officers. She also testified that she did not know there was a firearm in the dresser, as it was Mr. Morris's dresser. She further testified that she was aware of the approximately one ounce of marijuana in the top drawer of the dresser because Mr. Morris had brought it to her to smoke. She stated that the plastic bags were on the dresser because, on the day of the search, she had taken them from the kitchen to the bedroom, removed marijuana from the top drawer, and put it in a baggie to take with her.

Here, the jury was instructed that, to sustain this charge, the State had to prove that she or an accomplice possessed a controlled substance with the intent to deliver while in possession of a firearm. *See* Ark. Code Ann. § 5-74-106(a)(1) (Repl. 1997). The jury was further instructed that "[i]t is a defense ... that defendant, Donna Morris, was in her home and the firearm was not readily accessible for use." *See* Ark. Code Ann. § 5-74-106(d) (Repl. 1997).

In her initial brief, Ms. Morris argues that because she "did not know the firearm was in her husband's dresser drawer, the firearm could not have been 'readily accessible' to her for use." In so arguing, she cites cases for the proposition that the State had to establish constructive possession of the firearm. In her reply brief, she further argues that the State failed to establish that she possessed the marijuana with the intent to deliver, that she possessed the firearm, or that there was some link between her possession of the marijuana and the firearm.

At trial, however, Ms. Morris's attorney argued only that "it is clear that these guns were not readily accessible." He noted that "[a]lmost all of them were in a locked cabinet" and that "[t]he only one that was loaded was in a drawer that was in the bedroom." Her attorney further stated that "[n]othing was exposed that was close to them that was readily accessible...." In concluding his arguments, her attorney stated, "I think there also has to be sufficient evidence that they are guilty of possession of the marijuana with intent to deliver, but I'm mainly referring to the defense that these guns were in their home; they were no[t] readily accessible."

Thus, at trial, Ms. Morris did not argue that she did not possess the marijuana or the firearm. Likewise, she did not argue that the State failed to establish a link between her possession

of the marijuana and the firearm. Rather, she argued that she could avail herself of the defense that the firearms were not readily accessible. In a challenge to the sufficiency of the evidence, a defendant must inform the trial court of the specific basis for the challenge, and arguments not raised at trial will not be addressed for the first time on appeal. *See, e.g., Abshure v. State*, 79 Ark. App. 317, 87 S.W.3d 822 (2002). Further, parties cannot change the grounds for an objection on appeal, but are bound on appeal by the scope and nature of the objections and arguments presented at trial. *Id.* Thus, the only issue raised below and preserved for appeal concerns the defense that Ms. Morris was in her home and the firearm was not readily accessible for use. *See Gilbert, supra* (treating, in a challenge to the sufficiency of the evidence, the issues of possession of the firearm, the connection between the firearm and the controlled substance, and the accessibility of the firearm, as separate challenges).

■ Here, Ms. Morris testified that, on the day of the search, she opened a dresser drawer to remove marijuana. The firearm was in the same dresser. It was not locked away, and it was loaded. Given this evidence, we conclude that there was substantial evidence that the firearm in the dresser was readily accessible for use by Ms. Morris. *See Manning v. State*, 330 Ark. 699, 956 S.W.2d 184 (1997) (holding that a loaded firearm wrapped in a ski mask that was in a closet in the bedroom was readily accessible for use to the defendant, who was in the kitchen). We affirm her conviction for simultaneous possession.

Next, citing Article 2, Section 15, of the Arkansas Constitution, appellants argue that the evidence seized pursuant to the search warrant should be suppressed because the warrant was based on evidence obtained when the officers, without a warrant, illegally removed from their property trash that they had set out for pickup by a trash-collection service. Appellants argue that they had a reasonable expectation of privacy in the trash and that the officers violated this expectation of privacy by entering onto their curtilage, at night, and removing closed opaque trash containers that were to be picked up by a private trash-collection service. They further argue that they had a reasonable expectation of privacy in the trash by virtue of state laws regulating solid-waste management. We, however, conclude that appellants did not have a reasonable expectation of privacy in the trash.

At the suppression hearing, law enforcement officers stated that at approximately 10:00 p.m., on March 5, 2002, they drove past appellants' residence and saw two closed plastic ninety-six-gallon trash containers located in the bottom of a ditch. The officers variously testified that the containers were "at the curb," in the ditch "just off the road," and in the ditch "just at the edge of the road, just off the edge of the roadway." There were several other trash containers in the neighborhood that were about the same distance off the roadway. Officers stepped from the roadway into the ditch, removed three bags from one of the containers, emptied the contents of the other into a truck on the road, and returned the container to the ditch. The contents were later inspected by the officers. The parties stipulated that the trash was to be picked up by Waste Corporation of America. One officer testified that appellants' trash would have been collected the next morning.

Appellants also testified at the hearing. Ms. Morris testified that the containers were normally five or six feet off the road and that on March 5, the containers were taken to the ditch for the purpose of being picked up by the waste-management company, to which appellants paid a service fee. Mr. Morris testified that the containers were seven to eight feet from the road and that on March 5, the containers were taken to the ditch for pickup.

■ ■ In reviewing warrantless searches, we conduct a *de novo* review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003). We note that in considering Article 2, Section 15, of the Arkansas Constitution, the Arkansas Supreme Court has concluded that "this court has not traditionally viewed a warrantless search of items such as one's trash or garbage differently from the federal courts," and that "the Fourth Amendment analysis under *California v. Greenwood*, [486 U.S. 35 (1988)], provides adequate protection against searches of a garbage container left at the curb of one's residence." *Rikard v. State*, 354 Ark. 345, 355, 123 S.W.3d 114, 119-120 (2003). Adopting the *Greenwood* analysis in *Rickard*, the Arkansas Supreme Court held that a warrantless search and seizure of garbage from a container left at the curb in front of a residence did not violate

Article 2, Section 15, of the Arkansas Constitution. *Id.* With *Rikard* in mind, we look to *Greenwood* to analyze appellants' argument.

In *Greenwood*, the United States Supreme Court held that determining whether the Fourth Amendment was violated would turn on whether the manifested subjective expectation of privacy in the garbage left at the curb outside the house would be accepted by society as objectively reasonable. The Court concluded that, by exposing the garbage to the public, a claim to Fourth Amendment protection was defeated. The Court observed that plastic garbage bags left on or at the side of a public street were readily accessible to members of the public and that the refuse was placed at the curb for the express purpose of conveying it to a third party, the trash collector. The Court concluded that, by placing the trash for collection in an area accessible to the public, there was no reasonable expectation of privacy in the discarded items.

█ Here, appellants testified that they placed the garbage in the ditch for pickup; thus, the garbage was exposed to the public in an area accessible to the public. Given that the trash was exposed to the public, appellants did not have a reasonable expectation of privacy in the trash, and it is irrelevant that appellants privately contracted for trash pickup or that the canisters were closed and opaque. Furthermore, as the trash was exposed to the public, there is no reason to consider appellant's assertion that we should apply case law evidencing the Arkansas Supreme Court's scrutiny of nighttime searches of a residence and the surrounding curtilage. As the Arkansas Supreme Court has noted, "[W]hat a person knowingly exposes to the public is not a subject of Fourth Amendment protection." *McDonald v. State*, 354 Ark. 216, 222, 119 S.W.3d 41, 45 (2003).

█ We also note that appellants argue that they had a reasonable expectation of privacy by virtue of state laws regulating solid-waste management. The record does not reflect that this specific argument was made before the circuit court. Consequently, it was not ruled upon by that court. As such, the argument was not preserved for appellate review. *See Rikard*, 354 Ark. at 359, 123 S.W.3d at 122.

Affirmed.

VAUGHT and BAKER, JJ., agree.