Billy Joe HENSON *v.* STATE of Arkansas

CA CR 05-679                                          227 S.W.3d 450

Court of Appeals of Arkansas
Opinion delivered February 8, 2006

*Cecilia Ashcraft*, for appellant.

*Mike Beebe*, Ark. Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. Appellant Billy Joe Henson was charged with theft by receiving following an incident in which he and his female companion allegedly attempted to use someone else's credit card to purchase over $100 in merchandise at an Exxon gas station (Exxon). The jury found Henson guilty of theft by receiving and sentenced him to twenty years' imprisonment as an habitual offender. Henson appeals, alleging that the trial court erred in denying his motion for directed verdict because the State failed to prove that he committed the crime of theft by receiving, and that the trial court erred in refusing to allow him to testify on his own behalf after both sides had rested but before jury instructions were administered. We affirm on both issues.

The evidence, viewed in the light most favorable to the verdict, reveals the following. On August 23, 2003, Henson and his companion Phyllis Dendy entered an Exxon and, after browsing for a few minutes, placed over $100 in merchandise at the counter next to the cash register. When Henson presented a credit card as payment, the cashier, Ella Davis, following store policy, asked Henson to provide photographic identification. Davis testified that Henson told her that he did not have any identification because it had recently been stolen and added that the credit card belonged to his companion. When pressed, Dendy also claimed

that she did not have any identification because it had been stolen. Davis refused to complete the sale. Davis testified that Henson and Dendy said some curse words and then left, indicating that they would just go somewhere else. She testified that she saw the two get into a white or gray older model car and drive off.

Davis reported the incident to her manager, who called the North Little Rock Police to report possible credit-card fraud. Officer Forney responded to the scene and viewed a videotape of the incident; he then radioed a description of the suspects and their vehicle to Patrol Officer Hart. Officer Hart spotted a vehicle matching the one from Davis's description in the parking lot of a nearby Kroger grocery store (Kroger). Officer Hart then informed Officer Forney that he had found someone fitting the description of the male suspect walking out of Kroger. While Officer Forney questioned this person, Officer Hart went to observe if anyone approached the car. Officer Forney informed the suspect, who identified himself as Billy Joe Henson, that he had been stopped because he matched the description of someone suspected of credit-card fraud. After Officer Forney ran Henson's information through the computer and discovered that there were no active warrants on Henson, he allowed Henson to leave but stated that he would keep his name and information for the future investigation.

Afterwards, Officer Hart radioed to Officer Forney that there was a woman sitting in the suspect vehicle. Both officers went to question the woman, who identified herself as Phyllis Dendy and voluntarily handed over a credit card in the name of Alyssa Loyd, as well as several receipts, including one from Books-A-Million, which was located very close to both the Exxon and the Kroger. At that time, the officers administered her Miranda rights and placed her under arrest; they also arrested Henson as he came toward the car.

At the trial, Loyd testified that she worked as a "brewista" at the Books-A-Million café and that she was unaware that she did not have her credit card until police called her later that day. She stated that she kept her card in a folio on her key ring; that she usually kept the key ring under the counter; that things were very busy on the day in question, so she inadvertently placed the key ring on top of the counter within reach of customers; and that she had never given anyone permission to use her credit cards. Davis testified that, although she could not identify him in a photo lineup shortly after the incident, she was certain that Henson was the man who handed her Loyd's credit card.

At the close of the State's case, Henson moved for a directed verdict, asserting that the State did not prove that he had committed the crime of theft by receiving; he contended that he did not give Davis the card, that he never had possession of the card, and that the videotape did not show him with possession of the card. The motion was denied. Henson's counsel advised the trial court that Henson had "just blurted out that he wanted to testify," to which the trial court responded that he wanted an answer and if Henson was not going to testify "then I want that on the record here at the bench." The following exchange then took place after Henson conferred briefly with his counsel:

> MR. PADILLA: After discussing our options, my client has decided that he chooses not to take the stand at this time.
>
> THE COURT: Is that correct, Mr. Henson, that you choose to —
>
> HENSON: Yes, but I'd like for the jury to be instructed as to my rights when I testify.
>
> THE COURT: Well, I have a jury instruction for that. They will be instructed as to that. But that is correct then, it is your decision to not testify?
>
> HENSON: Yes sir.

Defense counsel then rested and renewed his motion for a directed verdict, which was again denied. Counsel for both sides next conferred in the judge's chambers about the proper jury instructions. The following bench conference then occurred:

> MR. PADILLA: My client has decided at this time to disregard his counsel's advice and he's decided that he wishes to take the stand in his own defense and testify. I've urged him not to, and he had changed his mind in the course of the last few minutes in chambers and chooses to take the stand.
>
> THE COURT: Well, I'll make it easy on this. Depending upon what the jury's conclusion is, he may have the opportunity in the next phase. But all sides have rested and we're done, and we're going on with the jury instructions on this phase. Okay? You may all be seated.

HENSON: So, I am refused to testify.

MR. PADILLA: You are not going to be allowed to testify because both sides have rested.

Jury instructions were then read and closing arguments were presented. The jury convicted Henson of theft by receiving and sentenced him to twenty years' imprisonment as an habitual offender; this appeal ensued.

Henson first argues that the court erred in denying his motions for directed verdict because the State failed to meet its burden of proving that he committed the crime of theft by receiving. A motion for directed verdict is viewed as a challenge to the sufficiency of the evidence. *Watson v. State*, 358 Ark. 212, 188 S.W.3d 921 (2004). In reviewing a challenge to the sufficiency of the evidence, the appellate court views the evidence in the light most favorable to the State and considers only the evidence that supports the verdict, affirming the conviction only if substantial evidence exists to support it. *Id.* Substantial evidence is evidence of adequate force and character that will, with reasonable certainty, compel a conclusion one way or the other, without resorting to either speculation or conjecture. *Id.*

In order to commit the crime of theft by receiving, a person has to receive, retain, or dispose of stolen property of another person, knowing that it was stolen or having good reason to believe that it was stolen. Ark. Code Ann. § 5-36-106 (Supp. 2003). A person is an accomplice in the commission of a crime if, with the purpose of promoting or facilitating the commission of an offense, he: "(1) [s]olicits, advises, encourages, or coerces the other person to commit it; or (2) [a]ids, agrees to aid, or attempts to aid the other person in planning or committing it; or (3) [h]aving a legal duty to prevent the commission of the offense, fails to make proper effort to do so." Ark. Code Ann. § 5-2-403 (Repl. 1997). A person does not commit an offense unless he acts with a culpable mental state with respect to each element of the offense that requires a culpable mental state. Ark. Code Ann. § 5-2-204(b) (Repl.1997). Theft by receiving requires that the defendant act "knowingly," meaning that the defendant is aware of his conduct or the attendant circumstances. Ark. Code Ann. § 5-2-202(2) (Repl. 1997). Accomplice liability requires "purposeful" action, which occurs when it is the defendant's conscious object to engage in a certain conduct or to cause a certain result. Ark. Code Ann. § 5-2-202(1).

The State argues that while Henson made timely directed-verdict motions, he only argued that there was insufficient proof that the property was recently stolen and that he acted as an accomplice; and therefore, his argument that the State failed to show that he acted with a knowing mental state is not preserved because this court does not consider arguments that are made for the first time on appeal. *Morris v. State*, 86 Ark. App. 78, 161 S.W.3d 314 (2004).

In this case, the theory of accomplice liability was implicated. One is an accomplice where he renders the requisite aid or encouragement to the principal with regard to the offense at issue. *Cook v. State*, 350 Ark. 398, 86 S.W.3d 916 (2002). When two people assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. *Id.* One cannot disclaim accomplice liability simply because he did not personally take part in every act that went to make up the crime as a whole. *Id.*

Here, the State provided sufficient evidence to prove that Henson was at least an accomplice in the crime of theft by receiving. While Henson claims that the State did not prove that the credit card was recently stolen, Loyd testified that she normally kept her credit card in an ID folder attached to her key ring, that her card was indeed missing on the date in question when the police called to inform her that they had recovered her credit card, and that she had given no one permission to possess or use her card. The jury could have inferred from her testimony that the card was recently stolen. In addition, Davis testified that it was Henson who presented her with the credit card and that Henson indicated that he and Dendy were "together." The evidence also established that Dendy was in the Books-A-Million where Loyd worked around the time that the credit card was stolen, that Henson presented that credit card at the Exxon a short time later, and that he and Dendy tried to purchase over $100 in merchandise. While much of the evidence against Henson is circumstantial because it was Dendy who was placed in proximity to the theft and who actually surrendered the card to police, circumstantial evidence can provide the basis to support a conviction if it is consistent with defendant's guilt and inconsistent with any other reasonable conclusion, and such a determination is a question of fact for the fact-finder to determine. *Von Holt v. State*, 85 Ark. App. 308, 151 S.W.3d 1 (2004).

Henson also argues that Davis was not a credible witness and that the jury should not have believed her in light of the fact that she could not identify Henson from a photo line-up soon after the incident and because the videotape did not appear to show Henson actually handing the credit card to Davis. Davis testified that Henson was the man who handed her Loyd's credit card on the day in question. Also, it was undisputed that the videotape was not clear by the time the case was tried; and while the tape did not conclusively show that Henson handed the credit card to Davis, neither did it show Dendy handing the credit card to Davis. The tape essentially provided inconclusive evidence, and the jury, as the trier of fact, was entitled to believe all or part of any witness's testimony and to resolve any conflicts in testimony and inconsistencies in evidence. *Brown v. State*, 82 Ark. App. 61, 110 S.W.3d 293 (2003).

█ While the State asserts that the argument that it did not properly prove Henson had the requisite state of mind was not properly preserved, the issue can also be resolved in its favor. The theft-by-receiving statute states that a person's unexplained possession or control of recently stolen property gives rise to the presumption that he knows or believes the property to be stolen. Ark. Code Ann. § 5-36-106(c) (Supp. 2003). In this case, Henson offered no explanation as to why he was in possession of a credit card that did not belong to him. In sum, looking at the evidence in a light most favorable to the verdict, the verdict is supported by substantial evidence and should be affirmed.

Henson next argues that the trial court violated his constitutional rights when it refused to let him testify. A defendant in a criminal case has the right to testify in his own behalf under the First, Sixth, and Fourteenth Amendments of the United States Constitution. *Rock v. Arkansas*, 483 U.S. 44 (1987). The right to present relevant testimony is not without limitation and may, in appropriate cases, bow to accommodate other legislative interests in the criminal trial process; however, restrictions on the defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve. *Id.*; *see also Whitfield v. Bowersox*, 324 F.3d 1009 (8th Cir. 2003) (holding that the defendant's right to testify is circumscribed by procedural and evidentiary rules, when the rules are neither arbitrary nor disproportionate to the right). Because the right to testify is a fundamental constitutional guarantee, only the defendant is empowered to waive this right; in addition this waiver should be made voluntarily

and knowingly. *United States v. Bernloehr*, 833 F.2d 749 (8th Cir. 1987). A voluntary and knowing waiver of the right to testify may exist where the defendant remained silent after counsel rested. *Whitfield, supra; see also United States v. Kamerud*, 326 F.3d 1008 (8th Cir. 2003) (holding that if a defendant desires to exercise his constitutional right to testify, he must act affirmatively and express to the trial court his desire to do so at the appropriate time or a knowing and voluntary waiver of the right is deemed to have occurred). The right to testify must be exercised at the evidence-taking stage of the trial, and once this stage has been closed, the trial court has discretion over whether to reopen for submission of additional testimony. *United States v. Jones*, 880 F.2d 55 (8th Cir. 1989). This rule promotes both fairness and order- interests that are crucial to the legitimacy of the trial process. *Id.*

In *United States v. Stewart*, 20 F.3d 911 (8th Cir. 1994), the Court of Appeals for the Eighth Circuit held that a defendant's right to testify is not unqualified and must, at times, yield to the interests of order and fairness and found that Stewart failed to assert his desire to testify in a timely fashion where he had unequivocally stated his desire not to introduce evidence and the court had informed the jury that it would next hear closing statements. The circuit court found that the trial judge did not abuse his discretion in refusing to allow Stewart to testify, particularly in light of Stewart's previous numerous efforts to delay and disrupt the trial. *Id.*

In *Jones, supra*, the court found no abuse of discretion where the trial judge refused to allow defendant to testify where he did not state his intention to do so until after the close of evidence although he was aware of his rights, and where by the time the request to testify was made, the parties had prepared jury instructions and summations and potential witnesses had been released and were unavailable.

In this instance Henson should just as well have been allowed to testify. Certainly, our supreme court has held that a trial court has the discretion to allow the State to reopen its case to provide a missing element of its case after it has rested and the defendant has made a motion for directed verdict. *See Holloway v. State*, 312 Ark. 306, 849 S.W.2d 473 (1993) (allowing State to reopen case after defendant's motion for directed verdict, in order for six victims to testify and identify defendant as the culprit); *Cameron v. State*, 278 Ark. 357, 645 S.W.2d 943 (1983) (stating that it is "inconsequential whether flaws are recognized first by the

State or by the defendant" and finding that defendant was not prejudiced by trial court's permitting State to reopen case after defendant's motion for directed verdict). However, this court cannot say that the trial court abused its discretion in refusing to allow him to do so. Here, although Henson's response was qualified and somewhat inconsistent when the trial court first questioned him concerning his desire to testify, he responded affirmatively when the trial court again asked if it was his decision not to testify. Henson further failed to object after his attorney then rested without calling any witnesses. Henson requested that he be able to testify only after counsel had conferred in chambers to prepare jury instructions, at which point Henson's attorney stated that Henson had "changed his mind in the course of the last few minutes and chooses to take the stand."

The trial judge noted that Henson would have an opportunity to testify in the penalty phase but ruled that because both sides had rested, the trial would proceed. From these facts, we cannot say that the trial judge abused his discretion, where Henson clearly and on the record stated his intention not to testify in response to a direct question put to him by the trial court at the close of the evidence.

Affirmed.

PITTMAN, C.J., and GLOVER, J., agree.