Linda Ann WILLIAMS *v.* STATE of Arkansas

CA CR 06-429                                    241 S.W.3d 290

Court of Appeals of Arkansas
Opinion delivered October 11, 2006

*Erin Vinett*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Beth B. Carson*, Ass't Att'y Gen., for appellee.

JOHN MAUZY PITTMAN, Chief Judge. Appellant was charged with committing aggravated assault and domestic battery. After a bench trial, she was found guilty of one count of aggravated

assault and one count of aggravated assault on a family member. On appeal, she argues that the trial court erred in refusing to grant a directed verdict on the ground that the State failed to prove that appellant engaged in conduct that created a substantial danger of death or serious physical injury. We affirm.

A motion for directed verdict is viewed as a challenge to the sufficiency of the evidence. *Henson v. State*, 94 Ark. App. 163, 227 S.W.3d 450 (2006). The test for determining evidentiary sufficiency is whether there is substantial evidence to support the finding of guilt; on appeal, the court reviews the evidence in the light most favorable to the appellee and sustains the conviction if there is any substantial evidence to support it. Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Schwede v. State*, 49 Ark. App. 87, 896 S.W.2d 454 (1995).

A person commits aggravated assault if, under circumstances manifesting extreme indifference to the value of human life, he or she purposely engages in conduct that creates a substantial danger of death or serious physical injury to another person. Ark. Code Ann. § 5-13-204(a)(1) (Repl. 2006). A person commits aggravated assault on a family or household member if, under circumstances manifesting extreme indifference to the value of human life, he purposely engages in conduct that creates a substantial danger of death or serious physical injury to a family or household member. Ark. Code Ann. § 5-26-306(a) (Repl. 2006).

Viewing the evidence in the light most favorable to the appellee, the record shows that appellant was involved in a week-long affair with Virgil Ware that resulted in the birth of a child. There had recently been acrimonious legal proceedings between appellant and Mr. Ware concerning custody of the two-year-old child. As a result, appellant was under a restraining order to avoid contact with Mr. Ware.

On June 21, 2005, appellant drove to Mr. Ware's home, opened her car door, and shouted something about the child. Appellant then got out of her car and, using a razor, began scratching the side and back of a car belonging to Mr. Ware's girlfriend, Danielle Utsey. When Mr. Ware attempted to intervene, appellant said that she "got something for him" and attacked Mr. Ware with a baseball bat. As they struggled, appellant struck

Mr. Ware on the head with the bat, then swung at him and missed, the blow being delivered with sufficient force to break a car window.

By this time, Ms. Utsey and her sister Monica had come outside and were standing on the sidewalk by the street. Appellant then re-entered her car. Ms. Danielle Utsey described the subsequent events as follows:

> [S]he backed back and then tried to run us over. So we like ran in the ditch. And after that she pulled off. She drove her car toward me I would say about three times. When she was doing that Virgil was like beside me. Right beside me to my left, and Monica was to my right. I know she wasn't just trying to drive off down the street because there's a ditch. She drove off this way toward us — where the ditch is at, drove right — ran us in the ditch. She almost went in the ditch. If she went any further, she wouldn't have been able to back up and get out of the ditch.

Ms. Monica Utsey testified that:

> [Mr. Ware] wrestled her back to the car. And she just — she got in the car and I was like, Danielle, she's going to hit us. So we come back up in the yard. And just then she ran into the ditch trying to hit us with the car.

Mr. Ware recalled the event as follows:

> At that point, she jumped in her car to leave. She jumped in her car, but she didn't leave. She tried to hit me with the car once and then when Monica and them made it to the street — when Monica and Danielle made it to the street, she tried again. Then she tried — the last time she did, she ran in the ditch and then she backed up.

Appellant's sole argument for reversal is that, with regard to the assault convictions, the testimony that she tried to hit the victims with her car does not constitute substantial evidence that she engaged in conduct that created a substantial danger of death or serious injury to the victims. We do not agree. The fact-finder does not and need not view each fact in isolation, but rather considers the evidence as a whole. *Bridges v. State*, 46 Ark. App. 198, 878 S.W.2d 781 (1994). Here, the testimony regarding appellant's attempt to run over the victims can be considered in light of the evidence that appellant, in violation of a no-contact

order, drove to Mr. Ware's home and engaged in various acts of violence including property damage and physical injury to Mr. Ware by hitting him over the head with a baseball bat. Nor is the fact-finder required to set aside common sense. An automobile is a massive and powerful machine, and common sense tells us that such a machine is capable of inflicting death or serious physical injury to pedestrians even at relatively low speeds. The Arkansas Supreme Court has held that, under some circumstances of use, an automobile might constitute a deadly weapon. *Harmon v. State*, 260 Ark. 665, 543 S.W.2d 43 (1976). We hold that, in light of the evidence that appellant, after engaging in a rampage, intentionally attempted to strike the victims with her vehicle, there is substantial evidence that appellant engaged in conduct that created a substantial danger of death or serious injury to the victims.

Affirmed.

BIRD and NEAL, JJ., agree.