Dorothy L. WARDEN, Appellant

v.

STATE of Arkansas, Appellee.

No. CA CR 10–784.

Court of Appeals of Arkansas.

Feb. 2, 2011.

Francis Parker Jones, III, Benton, for appellant.

Karen Virginia Wallace, Little Rock, for appellee.

JOHN B. ROBBINS, Judge.

Appellant Dorothy Warden was convicted in a bench trial of aggravated assault. As a result of her conviction, Ms. Warden received a two-year suspended imposition of sentence and $300 in fines and court costs. On appeal, Ms. Warden argues that the trial court erred in denying her motion for directed verdict. Alternatively, she contends that the trial court erred in failing to consider lesser-included offenses of assault because the State failed to prove the requisite mental state for aggravated assault. We affirm.

 Arkansas Code Annotated section 5–13–204(a) (Repl.2006) provides:

(a) A person commits aggravated assault if, under circumstances manifesting extreme indifference to the value of human life, he or she purposely:

(1) Engages in conduct that creates a substantial danger of death or serious physical injury to another person; or

(2) Displays a firearm in such a manner that creates a substantial danger of death or serious physical injury to another person.

A directed-verdict motion is a challenge to the sufficiency of the evidence. *McDole v. State*, 339 Ark. 391, 6 S.W.3d 74 (1999). We consider sufficiency of the evidence before addressing other alleged trial errors. *Sera v. State*, 341 Ark. 415, 17 S.W.3d 61 (2000). The test for determining the sufficiency of the evidence is whether there is substantial evidence to support the verdict. *Id.* Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002). In considering the evidence, we will not weigh the evidence or assess credibility, as those are questions for the finder of fact. *Woods v. State*, 363 Ark. 272, 213 S.W.3d 627 (2005).

One of the alleged victims in this case was appellant's sister, Gail Owen. Mrs. Owen testified that on March 13, 2009, she lived in an apartment with her mother. Ms. Warden had previously lived with them in the apartment, but had moved to another apartment in the same complex about a week earlier. Mrs. Owen stated that their mother was in ill health and needed constant care, and that Ms. Warden would come to the apartment and care for their mother while Mrs. Owen was at work. Mrs. Owen is currently married to Blake Owen, but at that time Mr. Owen was her boyfriend and he would stay the night at her apartment two or three times a week.

On the morning of March 13, 2009, Mrs. Owen awoke and noticed that her personal items in the bathroom had been moved or knocked over. On that morning Mrs. Owen, her mother, and Blake were in the apartment. Mrs. Owen went to the bedroom that previously belonged to Ms. Warden and Ms. Warden was there. Mrs. Owen described the following events:

I asked her if she had knocked over the things in my bathroom and she said she

did. I left her room and went to the kitchen to make some coffee. I did not know where she was until I turned around and saw her in the kitchen holding a kitchen knife with a blade of about four inches long. Dorothy shook the knife at me and, for no reason, told me I needed to tell Blake to leave the apartment and not come back. I went to my bedroom and told Blake to leave because Dorothy was acting crazy, so he got up and got dressed. When we walked out of the bedroom, Dorothy was at the other side of the hallway holding a shotgun. Blake and I were facing her and she was standing there holding the open gun. She pulled a bullet-thing out of her pocket and put it in the gun. The gun was not pointing straight at us, but she was holding it. I told her, "Don't be stupid," and she said, "I'm not stupid, I'm insane." Then she shut the gun and I shoved Blake into the bathroom and shut the door behind us. I was afraid Dorothy was going to shoot us so I called 9–1–1.

Mrs. Owen testified that she and Blake remained in the bathroom until the police arrived. There was no arrest made at the scene, but Mrs. Owen explained that the officers told her it was a felony and she did not want her sister to go to prison. Three days later, Mrs. Owen and Blake went to the police station and provided information about the assault. Based on their statements to the police, a warrant was issued for Ms. Warden's arrest.

Eunice Norwood is also appellant's sister, and at the time of the incident she lived in Michigan. Ms. Norwood testified that after the incident occurred she had a telephone conversation with Ms. Warden. According to Ms. Norwood, Ms. Warden called her at work and told her something had happened, that everyone was okay, and that she needed to call Mrs. Owen.

After having a conversation with Mrs. Owen, Ms. Norwood told appellant that Mrs. Owen had told her that appellant had pointed a gun at Mrs. Owen and Blake and threatened the two of them. Ms. Warden did not refute that statement but responded, "well, now you know."

Officer Kory Bauer investigated the incident. He testified that he interviewed the victims, and that they told him that the gun was pointed down a hallway in their direction. After arriving at the apartment, he found a shotgun in the back bedroom. Officer Bauer referenced a letter written by Ms. Warden after the incident, wherein Ms. Warden wrote, "If I could 'want' to kill someone it would be Gail. She brought him into my mother's home."

■ Ms. Warden's first argument on appeal is that the trial court erred in denying her directed-verdict motion because there was insufficient evidence that she committed aggravated assault. Ms. Warden asserts that Mrs. Owen's testimony failed to prove that a loaded gun was ever pointed at her or Mr. Owen. She further asserts that the responding police officers did not believe that she caused a substantial danger of death or serious physical injury or else they would have arrested her then or taken her in for questioning. Ms. Warden contends that there was no evidence beyond suspicion or conjecture that she manifested extreme indifference to the value of human life by purposely engaging in conduct that creates a substantial danger of death or serious physical injury, all of which are required elements under the statute. Ms. Warden also cites *Mack v. State*, 2010 Ark. App. 514, 2010 WL 2522736, where we held that when circumstantial evidence alone is relied upon, the evidence must exclude every reasonable hypothesis other than the guilt of the accused. Ms. Warden submits that

the circumstantial evidence failed to exclude every other reasonable hypothesis.

■■ We hold that substantial evidence supports Ms. Warden's conviction for aggravated assault. As a result of the difficulty in ascertaining the actor's state of mind, a presumption exists that a person intends the natural and probable consequences of his or her acts. *Harmon v. State*, 340 Ark. 18, 8 S.W.3d 472 (2000). The fact-finder may draw upon common knowledge and experience to infer the defendant's intent from the circumstances. *Id.* In *Harris v. State*, 72 Ark. App. 227, 35 S.W.3d 819 (2000), we stated that the display of a gun instills fear in the average citizen, and as a consequence it creates an immediate danger that a violent response will ensue.

In the present case, the State presented testimony that Ms. Warden intimidated Mrs. Owen by shaking a knife with a four-inch blade. Then Ms. Warden produced a shotgun, and Mrs. Owen indicated that Ms. Warden said, "I'm not stupid, I'm insane," before chambering a shell. Mrs. Owen and Mr. Owen were down the hallway where Ms. Warden stood with the shotgun, and during interviews with the police the victims confirmed that the gun held by Ms. Warden was pointed in their direction. Mrs. Owen feared that appellant was going to shoot them so she retreated with Mr. Owen to call the police, and they remained in the bathroom until the police arrived. On this record, the fact-finder[6] could reasonably conclude that when she loaded the shotgun and pointed it in the Owens's general direction, Ms. Warden purposely created a substantial danger of death or physical injury under circumstances manifesting an extreme indifference to the value of human life.

■■ Ms. Warden's remaining argument is that the trial court erred in refusing to consider the lesser-included assault offenses because the State failed to prove the requisite mental state for aggravated assault. Pursuant to Ark.Code Ann. § 5–13–204(a) (Repl.2006), to be convicted of aggravated assault a person must purposely engage in conduct that creates a substantial danger of death or serious physical injury. A person acts purposely with respect to his or her conduct or as a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5–2–202(1) (Repl.2006). Ms. Warden argues that because it was not her conscious object to cause harm to the alleged victims the "purposely" requirement of the aggravated-assault statute was not met. Ms. Warden further submits that even if she did point the gun at the alleged victims, they removed themselves from the situation negating any danger that may have been present.

Ms. Warden argues that, at most, she acted recklessly and not purposely. Arkansas Code Annotated section 5–2–202(3) (Repl.2006) defines "recklessly" as follows:

(A) A person acts recklessly with respect to attendant circumstances or a result of his or her conduct when the person consciously disregards a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur.

(B) The risk must be of a nature and degree that disregard of the risk constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation[.]

A person commits the misdemeanor offense of first-degree assault if he or she recklessly engages in conduct that creates a substantial risk of death or serious physical injury to another person. Ark.Code Ann. § 5–13–205 (Repl.2006). Second-degree assault is committed if he or she recklessly engages in conduct that creates a substantial risk of physical injury to another person. Ark.Code Ann. § 5–13–

206 (Repl.2006). Ms. Warden argues that at most her conduct exhibited a conscious disregard of a substantial and unjustifiable risk. Because her conduct was not purposeful and was at most reckless, she asserts that the trial court should have considered the above lesser-included assault offenses.

In a jury trial, the trial court is obligated to charge the jury with a lesser-included offense if there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him or her of the included offense. *See* Ark.Code Ann. § 5–1–110(c) (Repl.2006). However, in this case there was a bench trial so the issue here is simply whether substantial evidence supports the trial court's finding that Ms. Warden committed aggravated assault. As we have already held in addressing Ms. Warden's first point challenging the sufficiency of the evidence, substantial evidence supports the conviction. Contrary to appellant's argument, the aggravated-assault statute does not require that it was her purpose to harm the victims; it requires that she purposely engaged in conduct that created a substantial danger of death or serious physical injury. *See Neely v. State,* 18 Ark. App. 122, 711 S.W.2d 482 (1986) (holding that elements of aggravated assault were met where appellant held a knife to the victim's throat and testified that he only intended to scare the victim). Based on our holding that there was substantial evidence to support the trial court's determination that Ms. Warden committed aggravated assault, we hold that it was unnecessary for the trial court to consider any lesser-included offenses.

Affirmed.

WYNNE and GLOVER, JJ., agree.