Cite as 2021 Ark. App. 115

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CR-20-14

| | | |
|---|---|---|
| JOEY D. WATTS | | **Opinion Delivered:** March 10, 2021 |
| | APPELLANT | |
| | | APPEAL FROM THE GRANT COUNTY CIRCUIT COURT [NO. 27CR-18-121] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE EDDY EASLEY, JUDGE |
| | | AFFIRMED; REMANDED TO CORRECT SENTENCING ORDER |

## RITA W. GRUBER, Judge

Appellant Joey Watts was convicted of aggravated assault and sentenced as a habitual offender to ten years' imprisonment. On appeal, he argues that the evidence is insufficient to support the conviction. We affirm but remand for correction of the sentencing order to reflect appellant's habitual-offender status.[1]

On December 4, 2018, the State charged appellant with aggravated assault and possession of firearms by certain persons. An amended information was filed on May 6, 2019, adding a habitual-offender allegation. A jury trial took place on October 21, 2019.

Brittney Harp testified that appellant is the boyfriend of her mother, Lillie Harp. On November 29, 2018, Lillie babysat Brittney's eight-month-old son at appellant's home

---

[1]*See, e.g.*, *Conley v. State*, 2021 Ark. App. 57. We note that appellant was also convicted of possession of firearms by certain persons but does not appeal that conviction.

where she lived. Brittney had spoken to her mom on her way there to pick up her son and knew that appellant and her mom were fighting. Brittney testified that when she arrived at the home, appellant's brother, Jessie, was coming out the front door cussing and yelling that he had to get "out of there." Brittney said that when she got to the door, which was wide open, her mom was coming toward her, and appellant was going after her mother with his fists "balled up." She testified that her mom had told her that appellant was hitting her while she was holding the baby and trying to block him. Brittney saw blood on her mom's ear. Brittney said she yelled, "I'm going to call the cops." She said that appellant turned around, went behind the loveseat in the living room, picked up a long-barreled gun, pointed it at her, and said, "Call them and see what happens." Brittney testified that her son was in his car seat screaming and she just froze. She thought that appellant might shoot her but did not know if the gun was loaded. Brittney testified that her mom jumped in front of the gun and "was like, you're not going to shoot anybody." It was at this point that Brittney said she hit the call button on her phone as she had already entered 911 when appellant first came running at her mom. Appellant put the gun down, and he and Lillie started arguing. Brittney grabbed her son and left. As she was leaving, she told her mom that she called "them" and heard her mom tell appellant to hide his guns. Brittney went to her van and waited on the police because she did not want to leave her mom.

On cross-examination, Brittney admitted that she did not care for appellant and did not want her mom to be with him. She said that her mom did not want her to call the police because she had a warrant for her arrest.

Captain Mark Harper of the Jefferson County Sheriff's Department responded to the 911 call. He testified that when he arrived, several people were outside including Brittney, Lillie, and Jessie. Brittney told him that her mom and appellant were fighting when she arrived to pick up her son; appellant's fists were pulled back like he was going to hit her mom; and she told appellant she was going to call the police. Brittney informed Harper that appellant grabbed a shotgun that was nearby, pointed it at her and said, "Go ahead and call and see what happens." Captain Harper did not make contact with appellant at the home but discovered three rifles leaning against the inside of a chicken coop, which was located ten to twenty feet behind a storage building that was about thirty feet from the residence. In addition, a pistol, a scope, and .22-caliber shells were found between two mattresses lying on the ground behind the storage building.

The State rested, and appellant's counsel moved for directed verdict on the charge of aggravated assault, stating that the evidence did not establish "a substantial danger of death or injury." Counsel argued that a gun alone "does not create a substantial risk of death or injury unless it's loaded or there is some other kind of actual assault that would have created that risk." He added that the gun was not fired nor was appellant close enough to Brittney to have even hit her with the gun because she was "across the room." The court denied the motion on the basis that appellant pointed a gun and followed with the words "call the police and see what happens." The court stated that if the jury believed Brittney, the statutory requirements of aggravated assault were met.

Appellant called both Lillie and Jessie as witnesses. Lillie acknowledged that she and appellant had been fighting but stated that there were no guns in the house and that appellant

did not point a gun at Brittney. She said that Brittney would lie about that to get her away from appellant. Jessie testified that there were no guns in the house and that the chicken coop was not on his property.

After resting, the defense renewed its directed-verdict motion, which was denied. The State called a rebuttal witness, and the defense again renewed its motion, which was again denied. The jury found appellant guilty of aggravated assault. A second phase of the trial took place on the felon-in-possession charge, and the jury found appellant guilty. Appellant was sentenced as a habitual offender to ten years for aggravated assault and twenty-six years for possession of firearms by certain persons, with the sentences to run consecutively. A timely notice of appeal was filed from the October 29, 2019 sentencing order.

A directed-verdict motion is a challenge to the sufficiency of the evidence. *Warden v. State*, 2011 Ark. App. 75, 381 S.W.3d 140. The test for determining the sufficiency of the evidence is whether there is substantial evidence to support the verdict. *Id*. Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id*. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id*. We will not weigh the evidence or assess credibility, as those are questions for the fact-finder. *Id*.

On appeal, appellant contends that the jury was left to speculate as to whether the gun was loaded or that "pointing the gun" created a substantial danger of death or injury to Brittney. He states that "there is simply, under the plain language of the statute, no evidence

4

that the action of [appellant] . . . created a substantial danger of death or serious physical injury." He notes that there was no evidence the gun was cocked, "off safety," or used as a bludgeoning weapon. He also points out that no gun was found in the household and that appellant put the gun down after a "few seconds."

A person commits aggravated assault if, under circumstances manifesting extreme indifference to the value of human life, he purposely displays a firearm in such a manner that creates a substantial danger of death or serious physical injury to another person. Ark. Code Ann. § 5-13-204(a)(2) (Supp. 2019). A person acts purposely when it is his conscious object to engage in conduct of that nature or to cause such a result. Ark. Code Ann. § 5-2-202(1) (Repl. 2013). As a result of the difficulty in ascertaining the actor's state of mind, a presumption exists that a person intends the natural and probable consequences of his or her acts. *J.N.A. v. State*, 2017 Ark. App. 502, 532 S.W.3d 582. The fact-finder may draw upon common knowledge and experience to infer the defendant's intent from the circumstances. *Id.* The aggravated-assault statute does not require that a weapon actually be used or that the victim actually fear for his safety but requires a substantial danger of death or the injury to another person. *Id.* (citing *Wooten v. State*, 32 Ark. App. 198, 201, 799 S.W.2d 560, 562 (1990)). In addition, we have stated that our statute "does not require that a verbal threat be used; instead, it is the appellant's overall conduct that must be examined." *Id.* at 9–10, 532 S.W.3d at 589. The fact-finder does not and need not view each fact in isolation but rather considers the evidence as a whole. *Id.* (citing *Williams v. State*, 96 Ark. App. 277, 241 S.W.3d 290 (2006)).

5

In *Harris v. State*, 72 Ark. App. 227, 35 S.W.3d 819 (2000), the appellant argued that there was insufficient evidence to support the aggravated-assault conviction because there was no evidence that the gun was loaded, that she had attempted to fire the gun, or that she had made any threatening remarks to the two victims. We affirmed the conviction and noted that "the fact that a gun was pointed at someone is enough to create a substantial danger of death or serious physical injury to another person." *Id*. at 234, 35 S.W.3d at 824.

Here, Brittney testified that she was aware appellant and her mother had been arguing before she reached the home to pick up her son. When she walked in the door, Brittney saw appellant coming at her mother with "balled-up fists" and told them she was going to call the police. Brittney said that appellant then picked up a long-barreled gun, pointed it at her while they were in the living room and stated, "Call them and see what happens." She testified that she froze and thought appellant might shoot her. Viewing the evidence in this case in the light most favorable to the State, there was sufficient evidence from which the jury could have concluded that an aggravated assault was committed.

Affirmed; remanded to correct sentencing order.

VIRDEN and BARRETT, JJ., agree.

*Hancock Law Firm*, by: *Charles D. Hancock*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.