

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–13–820

F.C.

APPELLANT

V.

STATE OF ARKANSAS

APPELLEE

**Opinion Delivered** March 19, 2014

APPEAL FROM THE BENTON COUNTY CIRCUIT COURT
[NO. J-13-12]

HONORABLE THOMAS SMITH, JUDGE

REVERSED

## DAVID M. GLOVER, Judge

F.C. was adjudicated delinquent by order filed June 20, 2013. The trial court found beyond a reasonable doubt that F.C. had committed the offense of accomplice to theft of property under Arkansas Code Annotated section 5-36-103(a) and (b)(4)(B), a Class A misdemeanor. He was placed on six months' supervised probation. For his sole point of appeal, F.C. contends that there is not sufficient evidence to support the adjudication. We agree.

*Background*

The adjudication hearing was held on May 29, 2013. Steven Sapp testified that he was employed at the Rogers Activity Center in September 2012 and that he knew both F.C. and a juvenile named J.J., identifying both in the courtroom. He explained that in September 2012, he was approached by Connie Horton, who told him that her cell phone was missing

from the gym. Horton showed him the bleachers where she last had her phone, and he was able to view the surveillance video. Sapp testified that from his recollection of the video, there was a volleyball clinic or practice in the "new gym," and that was where Horton's phone was located. He recalled that Horton had gotten up to help with the volleyball practice and left her phone on the bleachers. He said that the next thing he saw was J.J. "kind of walk by with a phone and it looked like [F.C.] was over there looking out near the curtain that divides our gym in half." Sapp further explained that the gym is divided by a blue curtain; that he could see F.C. standing next to the blue curtain; and that the phone was not very far from F.C. and J.J. According to Sapp, he reported this information to the police officers. He said that he watched the video from the point that Connie Horton was sitting in the bleachers, to her getting up, and "everything to that nature." He testified that he did not see anyone else go near her phone and that was why he concluded it was probably one or both of the juveniles.

On cross-examination, Sapp testified that there were other people in the middle of the volleyball court and that he had not witnessed anything live, i.e., that his knowledge of events was based upon his viewing of the surveillance video. He acknowledged that he did not know if F.C. was being a lookout; he just assumed that was the case. He said he never saw anyone actually steal the phone; he saw the juveniles in certain areas; and he was just coming to his own conclusions. On redirect, Sapp stated he did not see anybody else go near the phone; he saw J.J. make two passes by that area where the phone was located.

Connie Horton testified she had reported the theft of her cell phone in September

2012. She explained that she and her daughter were in the Rogers Activity Center because her daughter had volleyball practice that night. She said she was sitting on the front row of the bleachers in the gym; she was asked to help with the volleyball practice, which she did; and she laid her phone and car keys on the front-row bleachers when she went to help with practice. She testified she saw three boys come into the gym;[1] one of them sat a couple of rows behind where her phone was located; one of the boys stood by the curtain that separated the two gyms; and the other boy just walked by. She said she did not see him take her phone but he walked by; on the video, she could see him bend down; she did not see anybody else walk in during the practice time; and she realized her phone was missing at the end of practice. Horton explained that at first she thought her phone had possibly fallen under the bleachers, but she could not find it. It was then she thought "those kids stole my phone and that is what they were hanging out for." She reported the incident to the woman at the front desk, and Steven Sapp was then notified.

Horton testified that Sapp reviewed the video surveillance with her and she could not say specifically that it was either F.C. or J.J. on the video. She testified she observed three kids "kind of walk in together"; one of them "goes up and sits a couple of rows behind where my phone was"; one of them stood by the curtain; the other kid walked toward the wall a little further down and then walked back and leaned down next to where her phone was; she did not see him take the phone on the video, but he leaned down; the kid who was sitting

---

[1] J.J. and F.C. were the only juveniles tried for this offense. The third juvenile was apparently never identified or tried.

above then walked down the steps, and they all three walked out together. She said she did not see anybody else that night go by her phone, and she did not get her phone back.

On cross-examination, Horton said practice lasted about an hour that night; she noticed her phone missing at the end of practice; she did not always have her eyes on her phone that night; there were times she had her eyes off that area; she was occasionally chasing balls; "those boys were the only ones on the video tape that were in the area"; she never saw them take it "live"; she saw them on the video and it looked like he (J.J.) took it; she saw him (J.J.) reach down and pick up something; she could not tell if it was her phone or not; she could not say it was counsel's clients because she did not see their faces; and she was assuming that the boys on the video took her phone. Upon examination by the trial court, she stated in the hour that she was in the same room with her cell phone, she did not notice anyone else come into the gym other than those three boys. She further explained when she compared the video to what she saw live, her reaction was that those boys took it.

At the conclusion of the hearing, the trial court determined that all three of the juveniles were accomplices (the third one just had not been identified and tried), and that it was a scheme. The June 20, 2013 adjudication order found beyond a reasonable doubt that F.C. had committed the offense of accomplice to theft of property. This appeal followed.

*Discussion*

Our standard of review for determining the sufficiency of the evidence in a delinquency case is the same as that used in a criminal case: considering only the evidence that tends to support the finding of guilt and viewing it in the light most favorable to the State,

we will affirm the juvenile court's ruling if it is supported by substantial evidence. *A.F. v. State*, 2010 Ark. App. 523. Substantial evidence is evidence, direct or circumstantial, that is of sufficient force and character to compel a conclusion one way or the other, without speculation or conjecture. *Id.* In considering the evidence presented below, we will not weigh the evidence or assess the credibility of witnesses, as those are questions for the finder of fact. *Id.*

A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating its commission, the person: 1) solicits, advises, encourages, or coerces the other person to commit the offense, 2) aids, agrees to aid, or attempts to aid the other person in planning or committing the offense, or 3) having a legal duty to prevent the commission of the offense, fails to make a proper effort to prevent the commission of the offense. *T.D. v. State*, 2012 Ark. App. 140. When two or more persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both; one cannot disclaim accomplice liability simply because he did not personally take part in every act that made up the crime as a whole. *Id.* Mere presence at the scene of a crime is not enough to make a person an accomplice. *Id.* Except in extraordinary cases, even presence at the scene of the crime combined with actual knowledge that a crime is being committed is not sufficient to make a person an accomplice in the absence of any purpose to further the accomplishment of the offense. *Id.* Relevant factors in determining the connection of an accomplice to a crime are the presence of the accused in the proximity of a crime, the opportunity to commit the crime, and an association with a person involved

5

in a manner suggestive of joint participation. *Id.*

Here, J.J. was identified on the video as the person walking by the phone and bending down. However, F.C.'s accomplice liability is based entirely on testimony that he came into the gym with J.J. and the third juvenile, stood near the curtains separating the gyms, and looked through the curtains. We hold that this evidence is not of sufficient force and character to compel a conclusion one way or the other, without speculation or conjecture. We therefore reverse F.C.'s delinquency adjudication.

Reversed.

PITTMAN and VAUGHT, J.J., agree.

*Robert M. "Robby" Golden*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *LeaAnn J. Adams*, Ass't Att'y Gen., for appellee.