SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR-14-365

| | |
|---|---|
| H.V.<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** November 5, 2014<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. J-13-574]<br><br>HONORABLE THOMAS SMITH, JUDGE<br><br><br>AFFIRMED |

**BILL H. WALMSLEY, Judge**

H.V. appeals from the juvenile court's order adjudicating her delinquent for committing the offense of accomplice to theft of property, a class A misdemeanor, and ordering probation. Seventeen-year-old H.V. was alleged to have been an accomplice to her twenty-year-old boyfriend, Taylor Whiteside, who stole property from Wal-Mart in Rogers. On appeal, H.V. challenges the sufficiency of the evidence. We affirm.

At the adjudication hearing, Danny Ring from Wal-Mart's asset-protection department testified about observing H.V. and Whiteside on July 25, 2013. Ring watched H.V. and Whiteside via security camera as they looked at power tools and accessories in the hardware department because, according to Ring, this was a high-theft area. The security-camera video was played in court. Ring testified that Whiteside removed the electronic security tag from a tool accessory, threw the tag back onto the shelf, and placed the merchandise in his left

pocket. Ring said that H.V. was facing Whiteside when he was concealing the merchandise and appeared to be in conversation with him as he was removing the security tag. The couple purchased a couple of other items then were stopped by Ring as they were leaving the store. Whiteside told Ring that he did not steal any merchandise and that he was not going to cooperate. The police were summoned when the couple left the store.

The State rested and H.V. moved for a directed verdict, arguing that the State had only shown that she was present for the theft and this did not make her an accomplice. The motion was denied. H.V. testified that she did not notice Whiteside removing the security tag from the merchandise because she was reading a box to help him pick out a tool. H.V. said that she did not know Whiteside was going to steal something until he showed the item to her right before he put it in his pocket. She testified that she did not say anything to him or tell him to put it back because she knew he probably would not listen to her. She claimed that the reason she looked around was because it made her nervous when he showed her that he was going to put the item in his pocket.

Whiteside testified that H.V. did not ask, tell, or encourage him in anyway to steal something. He said that he was shopping for things he needed to fix his car and that he discussed with H.V. which items to get. He admitted to stealing the item and putting it in his left pocket because he did not have enough money to buy everything he wanted. He said that H.V. told him not to steal it, and he pretended to put the item back but really threw only the wrapper back onto the shelf. H.V. renewed her motion for directed verdict, which was denied, and the trial court adjudicated her delinquent. H.V. now appeals.

The test for determining sufficient proof is whether there is substantial evidence, direct or circumstantial, to support the verdict. *L.C. v. State*, 2012 Ark. App. 666, 424 S.W.3d 887. On appeal, we review the evidence in the light most favorable to the State and sustain the conviction if there is any substantial evidence to support it. *Id.* Evidence is substantial if it is forceful enough to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* In determining whether there is substantial evidence, we consider only that evidence tending to support the verdict. *Id.* We do not weigh the evidence presented at trial, as that is a matter for the fact-finder. *Id.*

A person commits theft of property if he or she knowingly takes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the property of another person with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-103(a)(1) (Repl. 2013). A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, the person: (1) solicits, advises, encourages, or coerces the other person to commit the offense; or (2) aids, agrees to aid, or attempts to aid the other person in planning or committing the offense. Ark. Code Ann. § 5-2-403(a)(1)–(2) (Repl. 2013).

When two or more persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both; one cannot disclaim accomplice liability simply because he did not personally take part in every act that made up the crime as a whole. *F.C. v. State*, 2014 Ark. App. 196. Mere presence at the scene of a crime is not enough to make a person an accomplice. *Id.* Except in extraordinary cases, even presence

3

at the scene of the crime combined with actual knowledge that a crime is being committed is not sufficient to make a person an accomplice in the absence of any purpose to further the accomplishment of the offense. *Id.* Relevant factors in determining the connection of an accomplice to a crime are the presence of the accused in the proximity of a crime, the opportunity to commit the crime, and an association with a person involved in a manner suggestive of joint participation. *Id.*

H.V. argues that even if she had actual knowledge that Whiteside had taken the merchandise, it is not sufficient to make her an accomplice because the security-camera video does not show her taking any action in furtherance of the theft. She argues that the video shows her merely standing beside Whiteside, and although she looked around after he pocketed the item because she was nervous, she claims there was no evidence that she knew the location of the video camera. H.V. contends that the trial court's motive in adjudicating her delinquent was to control her romantic relationship with her older boyfriend by limiting her contact with him as a condition of probation.

The State argues that by remaining huddled up to Whiteside while he removed the security tag from the merchandise, H.V. provided ample opportunity for Whiteside to conduct his criminal activity. The State contends that their relationship indicates an association between them that is suggestive of joint participation in the theft and that the video is proof that H.V. was more than merely present.

On the video, as Whiteside removes the security tag, H.V. is standing very close to him with her back to the camera and anyone who may walk down the aisle. She blocks the

camera's view of Whiteside's hands after he picks up the merchandise except for a couple of seconds where he can be seen removing the security tag. After nearly a minute, he is seen throwing the tag onto the shelf and placing an item in his pocket. A few seconds later, H.V. looks behind her and glances at the camera. After a couple more minutes of looking at merchandise and selecting items to buy, the couple walks to the front of the store. We hold that there was sufficient evidence that H.V. attempted to aid Whiteside by shielding his actions and then looking around. She admitted to knowing he was going to steal the item, and her actions aided the commission of the theft. Thus, we affirm.

Affirmed.

HARRISON and GRUBER, JJ., agree.

*Cross, Gunter, Witherspoon & Galchus, P.C.*, by: *Misty Wilson Borkowski*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *LeaAnn J. Adams*, Ass't Att'y Gen., and *Trae Norton*, Law Student Admitted to Practice Pursuant to Rule XV of the Rules Governing Admission to the Bar of the Supreme Court under supervision of *Darnisa Evans Johnson*, Deputy Att'y Gen., for appellee.