SLIP OPINION



Cite as 2015 Ark. App. 35

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CR-14-420

| | |
|---|---|
| A.D.<br><br>                 **APPELLANT**<br><br>V.<br><br>STATE OF ARKANSAS<br>                 **APPELLEE** | **Opinion Delivered** January 28, 2015<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. J-2013-624-D]<br><br>HONORABLE THOMAS E. SMITH, JUDGE<br><br>AFFIRMED |

**BRANDON J. HARRISON, Judge**

Fifteen-year-old A.D. appeals the Benton County Circuit Court's order that found him guilty as an accomplice to theft of property and adjudicated him delinquent. On appeal, he argues that the evidence was insufficient to support the court's ruling. We affirm.

In an amended delinquency petition filed 22 January 2014, A.D. was charged as an accomplice to theft of property, a Class A misdemeanor. The State alleged that A.D. aided two other juveniles in shoplifting from Gordman's. The court held a hearing in Feburary 2014, and Jill Timbes, a Gordman's employee, testified that she was in charge of "audit safety" and monitored security cameras, associates, and people entering the building. She explained that on September 7, 2013, she observed A.D. and another juvenile, C.B., enter the store, and that A.D. "looked up for a camera" when they entered the store. She agreed that it was protocol for her to observe anyone that either looked up

at the cameras or proceeded to the fragrance and jewelry areas, which are the store's highest theft areas. She observed the two young men wander around the store and stated that A.D. seemed nervous, describing him as "rocking back and forth, kind of wringing his hands, and just looking down the aisles. He was looking out more than he was looking at merchandise." The two young men then met up with a female, A.M., who was carrying "a lot" of store merchandise and a large black purse. Around this time, Timbes was also notified that store employees had found several empty hangers in the shoe department.

Timbes observed the three juveniles walking through the store and eventually stopping in the shoe department, where C.B. and A.M. proceeded to squat down to the floor for several minutes with A.D. standing "right over them." Timbes described A.D. as looking "back and forth" and "nervous." The prosecutor then played a DVD of the store surveillance footage from that day, which was a stipulated exhibit. Timbes explained that she confronted A.M. and C.B. as they left the store and took them to her office, then went back to confront A.D., who was walking out of the store. Timbes found several items in A.M.'s purse, including a leather jacket, shirts, socks, and a speaker. C.B. also had a speaker down his pants. A.D. did not have any merchandise in his possession.

Officer Christopher Douglas with the Rogers Police Department testified that he responded to a shoplifting report on September 7 and that he observed the three juveniles in Timbes's office. Douglas stated that the juveniles were cooperative and that A.D. "admitted to shoplifting, as well as the others. I can't give you specifics of what it was. But

it made me believe he was just as culpable as the other two that were there." He explained that the juveniles were arrested but released to their parents' custody.

At the close of the State's case, A.D. moved to dismiss,[1] arguing that he was "just there" and that "mere presence is not an accomplice to the theft." The court denied the motion and stated that

> if you're going to stand right next to your friends stealing stuff, and you block the aisle, you are—by your actions—helping the theft occur.
> And then when you walk around with your friends like you're just some good old shoppers, just out there to spend the money, acting like normal kids that are going to do some shopping, you're, after-the-fact, helping complete the crime.
> . . . .
> And when you stand there watching them steal, looking around, making sure nobody else is watching them steal, you're a part of the crime. You're a lookout.

C.B. then testified and admitted that he shoplifted from Gordman's. He stated that he and A.D. had ridden in A.M.'s car to the store, but he denied A.D.'s involvement, stating that "when we were literally done, he [A.D.] goes, 'Come on man, I'm leaving. There's people coming, and I don't want to be a part of this.'" C.B. testified that A.D. was angry and that he did not help them shoplift.

A.D. renewed his motion to dismiss, which was again denied. The court stated, "I didn't see [A.D.] getting mad, and telling them it was stupid, and trying to leave. I didn't see any of that in the video." Addressing A.D., the court found that "once you have knowledge that the stolen items are on the possession of your friends, and walking around the store, acting like normal teenagers, that nothing is going on; you've now become part

---

[1]A.D.'s motion for a directed verdict is treated as a motion for dismissal because the case was tried to the court.

of the scheme, the plan." The court found A.D. guilty, sentenced him to three months' probation, and assessed various costs and fees. A.D. now appeals to this court.

While a delinquency adjudication is not a criminal conviction, it is based upon an allegation by the State that the juvenile has committed a certain crime. *J.F. v. State*, 2009 Ark. App. 499. Our standard of review is the same as it would be in a criminal case, that is, whether the adjudication is supported by substantial evidence. *E.S. v. State*, 2013 Ark. App. 378. Substantial evidence is evidence, direct or circumstantial, that is of sufficient force and character to compel a conclusion one way or the other, without speculation or conjecture. *A.F. v. State*, 2010 Ark. App. 523. In considering the evidence presented below, we will not weigh the evidence or assess the credibility of witnesses, as those are questions for the finder of fact. *Id.*

A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating its commission, the person (1) solicits, advises, encourages, or coerces the other person to commit the offense, (2) aids, agrees to aid, or attempts to aid the other person in planning or committing the offense, or (3) having a legal duty to prevent the commission of the offense, fails to make a proper effort to prevent the commission of the offense. *T.D. v. State*, 2012 Ark. App. 140. When two or more persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both; one cannot disclaim accomplice liability simply because he did not personally take part in every act that made up the crime as a whole. *Id.* Mere presence at the scene of a crime is not enough to make a person an accomplice. *Id.* Except in extraordinary cases, even presence at the scene of the crime

combined with actual knowledge that a crime is being committed is not sufficient to make a person an accomplice in the absence of any purpose to further the accomplishment of the offense. *Id.* Relevant factors in determining the connection of an accomplice to a crime are the presence of the accused in the proximity of a crime, the opportunity to commit the crime, and an association with a person involved in a manner suggestive of joint participation. *Id.*

The issue presented here is whether there was substantial evidence presented at trial to prove that A.D. aided, attempted to aid, or agreed to aid C.B. and A.M. in shoplifting. A.D. argues that he was merely present while the other two juveniles shoplifted and that the evidence did not show that he aided or encouraged the commission of the crime. The State counters that the testimony and video footage showed, and the circuit court specifically found, that A.D. aided the other juveniles by acting as a lookout. A.D. disagrees and argues that this case is similar to *F.C. v. State*, 2014 Ark. App. 196, in which this court reversed a juvenile's delinquency adjudication. F.C. was accused of being an accomplice in the theft of a cell phone, and in reversing, we explained:

> J.J. was identified on the video as the person walking by the phone and bending down. However, F.C.'s accomplice liability is based entirely on testimony that he came into the gym with J.J. and the third juvenile, stood near the curtains separating the gyms, and looked through the curtains. We hold that this evidence is not of sufficient force and character to compel a conclusion one way or the other, without speculation or conjecture. We therefore reverse F.C.'s delinquency adjudication.

*Id.* at 6.

*F.C.* is distinguishable from this case. In *F.C.*, the circuit court made no specific finding that F.C. acted as a lookout, and the witnesses only testified as to their

observations of the surveillance tape, but here, the court was able to view the surveillance first-hand and make a determination that A.D. acted as a lookout.  Having reviewed the testimony and the video footage in this case, we find substantial evidence to support the court's finding that A.D. acted as a lookout and was part of the overall plan to shoplift. To hold otherwise would require us to re-weigh the evidence or re-assess the witnesses' credibility, which we will not do.  *See A.F. v. State*, *supra*.

Affirmed.

ABRAMSON and GLOVER, JJ., agree.

*Flinn Law Firm, P.A.*, by:  *Jennifer Williams Flinn*, for appellant.

*Dustin McDaniel*, Att'y Gen., by:  *Brad Newman*, Ass't Att'y Gen., for appellee.