

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV–14–860

| | |
|---|---|
| S.C.<br><br>                **APPELLANT**<br><br>V.<br><br><br>STATE OF ARKANSAS<br><br>                **APPELLEE** | **Opinion Delivered** May 27, 2015<br><br>APPEAL FROM THE CRAIGHEAD<br>COUNTY CIRCUIT COURT,<br>WESTERN DISTRICT<br>[NO. JV-2014-217]<br><br>HONORABLE LEE FERGUS, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

The Craighead County Circuit Court adjudicated appellant S.C. delinquent for filing

a false report of rape.[1] She was sentenced to serve ninety days in juvenile detention and

ordered to perform 160 hours of public service, have no contact with the accused, and work

on getting her GED. S.C. argues on appeal that the trial court erred in denying her directed-

verdict motion.[2] We affirm.

### I. *Hearing Testimony*

Deputy Brian Womack with the Craighead County Sheriff's Office testified that on

July 22, 2014, he received a report from S.C. that she had been raped. Womack testified that

---

[1]In *S.C. v. State*, 2015 Ark. App. 118, this court remanded to settle and supplement the record and ordered rebriefing due to deficiencies in the appellant's abstract and addendum.

[2]Because the case was tried to the court, S.C.'s motion for a directed verdict is treated as a motion to dismiss. *See, e.g.*, *A.D. v. State*, 2015 Ark. App. 35, 453 S.W.3d 696.

SLIP OPINION

S.C. told him that she and several friends had gone swimming that afternoon; that the accused was driving her and the others home; that he drove her to a church; that the one other person who had not yet been dropped off stepped out of the car; and that the accused got into the back seat and "forcibly" raped her.

Investigator Ron Richardson with the Craighead County Sheriff's Office testified that he interviewed S.C., who showed him text messages on her cell phone. The following is a text-message string between her and the accused on the day after the incident:

ACCUSED:    Goodmorning

S.C.:       Wryd

S.C.:       Wrud

ACCUSED:    At my moms

S.C.:       Where does you're mom live?

ACCUSED:    Salem

S.C.:       I'm mad at you.

ACCUSED:    Y

S.C.:       Because I told you no last night.

ACCUSED:    Lol

S.C.:       You raped me.

ACCUSED:    Nope

S.C.:       Then what would you call it? I said no.

ACCUSED:    Then you said ok

S.C.: No I didn't!

ACCUSED: Yeah Hun Caz I told you if it hurt I'd stop and when I started I said do you want me to stop you said no keep going!!!

S.C.: No I didn't!!!!

Richardson also interviewed the accused who said that he and S.C. had consensual sex.[3] The accused provided Richardson with text messages between him and S.C. sent on the night of the incident. When Richardson confronted S.C. with those text messages, she vehemently denied having written them and "had an outburst." Those text messages read:

ACCUSED: Hey

S.C.: Why are we just sitting here? Lol

ACCUSED: Caz I wanna I'll take you home if you wanna go the weirdo

ACCUSED: Besides is crazy

S.C.: Well if you were back here I'd better lol.

ACCUSED: Lol ok I'll come back there

S.C.: Okay lol.

ACCUSED: Your having to much fun

S.C.: Now I'm turned on from you biting me!!!

ACCUSED: Hehe we'll he's in the car

S.C.: Make him get out lol.

ACCUSED: Are we could

---

[3]The record indicates that S.C. was approximately one month away from turning eighteen years old. There is no information on the age of the accused.

Forty-five minutes later:

S.C.: Did you do anything???

ACCUSED: What you mean

S.C.: Did you cum?

ACCUSED: No I didn't want to keep u that long

Richardson also interviewed the one person who had stepped out of the car, and he said that the accused and S.C. were "making out" when he left. Richardson further testified that S.C. later admitted that she had told the accused "no" at first but that she later said "ok" to sex. S.C. explained that she was a lesbian and was afraid that, if the accused had gotten her pregnant, her girlfriend would be mad.

In her testimony, S.C. confirmed the statements made to Richardson but explained further that she did not think anything would happen when she invited the accused to get into the back seat with her. S.C. testified that, although she was not interested in the accused romantically, as they used to be best friends, she had kissed him and sent him a text message saying that she was "turned on." S.C. claimed that she was only joking. She testified that the accused had wanted to have sex, that she had consistently told him "no," and that he had held her down and forced himself on her. S.C. testified, "I did eventually say okay because I couldn't do anything else." S.C. testified that, in making the report to police, she had left out the part where she said "ok" to sex because she was afraid that she would get in trouble.

S.C. moved for a directed verdict on the basis that she had filed the report because she truly believed that she had been raped. The trial court denied the motion.

4



## II.  *Standard of Review*

A motion to dismiss at a bench trial is identical to a motion for directed verdict at a jury trial because it is a challenge to the sufficiency of the evidence. *L.C. v. State*, 2012 Ark. App. 666, 424 S.W.3d 887. While a delinquency adjudication is not a criminal conviction, it is based upon an allegation by the State that the juvenile has committed a certain crime. *A.D. v. State*, 2015 Ark. App. 35, 453 S.W.3d 696. Our standard of review is the same as it would be in a criminal case, that is, whether the adjudication is supported by substantial evidence. *Id*. Substantial evidence is evidence, direct or circumstantial, that is of sufficient force and character to compel a conclusion one way or the other, without speculation or conjecture. *Id*. In considering the evidence presented below, we will not weigh the evidence or assess the credibility of witnesses, as those are questions for the fact-finder. *Id*.

## III.  *Argument*

S.C. argues that the only evidence the State had against her was "a series of small discrepancies" in her statements to police. She did not veer from her account that she had been raped. She explained on the stand why she had told the accused "ok" after having told him "no" and why she did not tell that to the police. S.C. argues that the inconsistencies in her statements do not negate the fact that she believed she had been raped. She argues that the trial court erred in finding her not credible.

## IV.  *Discussion*

A person commits the offense of filing a false report if she files a report with any law–enforcement agency of any alleged criminal wrongdoing on the part of another person

knowing that the report is false. Ark. Code Ann. § 5-54-122(b) (Repl. 2005). A person's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime; therefore, circumstantial evidence of a culpable mental state may constitute substantial evidence to sustain a guilty verdict. *Kelly v. State*, 75 Ark. App. 144, 55 S.W.3d 309 (2001). The intent to commit the offense may be inferred from the defendant's conduct and the surrounding circumstances. *Durham v. State*, 320 Ark. 689, 899 S.W.2d 470 (1995).

S.C.'s argument on appeal concerns only her credibility, and this court defers to the trial court's assessment. *A.D., supra.* The trial court expressly found that S.C. was not credible. The trial court could have reasonably concluded that S.C. did not provide the text messages from the night of the alleged rape because she knew that they were inconsistent with her subsequent report of rape. Also, S.C.'s conduct after being confronted with those text messages suggests that she knew her report to the police was false. Given the content of the text messages from the night of the incident and S.C.'s admission that she had agreed to have sex, we hold that there was substantial evidence to support the adjudication.

Affirmed.

GLADWIN, C.J., and HIXSON, J., agree.

*Terry Goodwin Jones*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *LeaAnn J. Adams*, Ass't Att'y Gen., for appellee.

SLIP OPINION