SLIP OPINION

Cite as 2017 Ark. App. 502

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-16-1085

|  |  |  |
|---|---|---|
| | | **Opinion Delivered** October 4, 2017 |
| J.N.A. | | APPEAL FROM THE SEBASTIAN |
| | APPELLANT | COUNTY CIRCUIT COURT, FORT SMITH DISTRICT |
| | | [NO. 66FJV-16-324] |
| V. | | |
| | | HONORABLE LEIGH ZUERKER, |
| STATE OF ARKANSAS | | JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

### N. MARK KLAPPENBACH, Judge

Appellant J.N.A., a seventeen-year-old male, was accused of breaking or entering into vehicles, fleeing, aggravated assault, resisting arrest, and theft by receiving. The prosecuting attorney filed the petition in the juvenile division of circuit court for these criminal behaviors alleged to have been committed in Fort Smith, Arkansas, in the predawn hours of July 24, 2016. The State filed a motion to have appellant tried as an adult or alternatively be adjudicated under Extended Juvenile Jurisdiction (EJJ). The Sebastian County Circuit Court conducted a hearing on this request and entered an order on September 2, 2016, designating this case as an EJJ matter. Following an October 3, 2016 bench trial, appellant was adjudicated delinquent on all five offenses and placed on probation for an indeterminate period of time not to exceed two years, pursuant to an order entered on October 4, 2016.

SLIP OPINION

Appellant filed a notice of appeal on October 27, 2016, specifying that he was appealing the October 4 adjudication and disposition order entered subsequent to the October 3 bench trial. Appellant argues on appeal that the trial court erred in the following ways: (1) by entering a defective order on its face purporting to designate this as an EJJ matter; (2) by finding that this case met the criteria for an EJJ matter; and (3) by finding there to be sufficient evidence that appellant committed aggravated assault. We lack appellate jurisdiction over the EJJ order, and we affirm the adjudication and disposition order.

First, we discuss appellant's first two points on appeal. Because appellant was seventeen years old at the time of the alleged offenses and because one of those offenses was aggravated assault, the State was permitted to request the juvenile division of circuit court to enter an EJJ designation in these delinquency proceedings. *See* Ark. Code Ann. § 9-27-501(a)(4) (Repl. 2015). The party requesting the EJJ designation has the burden to prove by a preponderance of the evidence that such a designation is warranted. Ark. Code Ann. § 9-27-503(b). The circuit court is required to hold an EJJ designation hearing within certain time limits set forth in Arkansas Code Annotated section 9-27-503(a). The circuit court is required to make written findings, and it must consider all of the following factors in making its determination to designate a juvenile as an EJJ offender:

> (1) The seriousness of the alleged offense and whether the protection of society requires prosecution as an extended juvenile jurisdiction offender;
> (2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;
> (3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

SLIP OPINION

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;
(5) The previous history of the juvenile, including whether the juvenile had been adjudicated delinquent and, if so, whether the offenses were against persons or property and any other previous history of antisocial behavior or patterns of physical violence;
(6) The sophistication and maturity of the juvenile, as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;
(7) Whether there are facilities or programs available to the court that are likely to rehabilitate the juvenile prior to the expiration of the court's jurisdiction;
(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;
(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and
(10) Any other factors deemed relevant by the court.

Ark. Code Ann. § 9-27-503(c). "For purposes of appeal, a designation order is a final appealable order and shall be subject to an interlocutory appeal." Ark. Code Ann. § 9-27-503(f). *See also D.B. v. State*, 2011 Ark. App. 151.

Appellant contends that the trial court erred by not making findings on all of the statutory factors and also that the trial court clearly erred in finding that appellant's case warranted an EJJ designation. The State contends that we lack appellate jurisdiction over the EJJ designation order because appellant failed to timely file a notice of appeal from that order, and furthermore, appellant failed to designate this order in his notice of appeal. We agree with the State.

While proceedings involving juveniles are considered civil cases, the Rules of Criminal Procedure apply to delinquency proceedings. *D.F. v. State*, 2015 Ark. App. 656, 476 S.W.3d 189. Whether an appellant has filed an effective notice of appeal is always an issue before the

SLIP OPINION

appellate court. *Bilyeu v. State*, 342 Ark. 271, 27 S.W.3d 400 (2000). The filing of a notice of appeal is jurisdictional. *Smith v. State*, 2009 Ark. 85; *Brady v. Alken*, 273 Ark. 147, 617 S.W.2d 358 (1981). Absent an effective notice of appeal, this court lacks jurisdiction to consider the appeal. *See Pannell v. State*, 320 Ark. 250, 895 S.W.2d 911 (1995).

Here, the EJJ designation order was filed on September 2, 2016, but the notice of appeal was not filed until October 27, 2016. This is too late. Arkansas Rule of Appellate Procedure–Criminal 2(a) (2016) requires that the time within which to appeal a judgment or order is within thirty days of the entry of that judgment or order. *Compare* Ark. R. App. P.–Civ. 4(a)(2016). The EJJ designation order is a final appealable order pursuant to statute, Ark. Code Ann. § 9-27-503(f). Thus, appellant was required to file a timely notice of appeal from the entry of the EJJ designation order.

We note as well that even if the appeal had been timely, appellant did not designate the EJJ designation order in his notice of appeal. Arkansas Rule of Appellate Procedure–Criminal 2(a) requires that a notice of appeal identify "the judgment or order or both being appealed." *Compare* Ark. R. App. P.–Civ. 3(e). Appellant did not mention the EJJ designation order in any fashion in the notice of appeal. Only the subsequent adjudication order filed on October 4, 2016, is mentioned with specificity. Substantial compliance is required, and there was no substantial compliance in this instance. *See Edwards v. State*, 2014 Ark. 185; *Wright v. State*, 359 Ark. 418, 198 S.W.3d 537 (2004).

Because this was a final order from which appellant had the right to appeal, appellant

SLIP OPINION

failed to appeal in a timely fashion, and he failed to designate the EJJ designation order in his notice of appeal, we lack jurisdiction to consider the appellant's first two arguments concerning the EJJ designation order.

Appellant's remaining argument is that the trial court erred by finding in the adjudication and disposition order that there was sufficient evidence that appellant committed aggravated assault. We disagree with his argument.

While a delinquency adjudication is not a criminal conviction, it is based on an allegation by the State that the juvenile has committed a certain crime. *A.D. v. State*, 2015 Ark. App. 35, 453 S.W.3d 696. Our standard of review is the same as it would be in a criminal case, that is, whether the adjudication is supported by substantial evidence. *Id.* Substantial evidence is evidence, direct or circumstantial, that is of sufficient force and character to compel a conclusion one way or the other, without speculation or conjecture. *Id.* In considering the evidence presented below, we will not weigh the evidence or assess the credibility of witnesses, as those are questions for the fact-finder. *Id.* The evidence is viewed in the light most favorable to the State. *A.W. v. State*, 2017 Ark. App. 34, 510 S.W.3d 811.

The State alleged that appellant committed aggravated assault, specifying that appellant, under circumstances manifesting extreme indifference to the value of human life, purposely engaged in conduct that created a substantial danger of death or serious physical injury to another person. *See* Ark. Code Ann. § 5-13-204(a)(1) (Repl. 2013). As a result of the difficulty in ascertaining the actor's state of mind, a presumption exists that a person intends

the natural and probable consequences of his or her acts. *Harmon v. State*, 340 Ark. 18, 8 S.W.3d 472 (2000). The fact-finder may draw upon common knowledge and experience to infer the defendant's intent from the circumstances. *Id.* Appellant specifically argues that there was no evidence that the gun he possessed was loaded, he never verbally threatened the officer who apprehended him, and he never drew the weapon; thus, there was no conduct creating a substantial danger of death or serious physical injury.

In determining whether there was substantial evidence to support the adjudication, we examine the evidence presented to the trial court at this bench trial. Fort Smith police responded to a call that a male (later identified as appellant) was breaking into vehicles. Officer Hulsey began patrolling the area, and he observed Officer Ohm chasing appellant, who was running "full speed." Hulsey repeatedly ordered appellant to stop, but he kept running, so Hulsey also gave chase. Appellant ran through yards, past obstacles in yards, and over fences, jumping and then dropping down several feet into a deep concrete drainage canal. There was standing water in the canal. As explained by Hulsey, when he caught up to Officer Ohm and appellant, he heard Ohm use his taser on appellant. Once appellant was finally subdued and in custody, notably soaking wet, Hulsey saw that Ohm was upset about appellant having a gun. A .25-caliber Taurus handgun, wallets, change, and other belongings that were not appellant's were found in the canal. Hulsey heard appellant say with an aggressive attitude that he did not care, he was a juvenile, and something like, "[Y]'all ain't going to do nothing to me."

SLIP OPINION

Ohm testified about his experience with appellant that night. He was the officer who initially found appellant in a vehicle, and when appellant saw Ohm, he "took off running." Ohm described the path appellant took trying to get away and how he and appellant ended up in the drainage canal, which was wet and slippery. As Ohm jumped into the canal, he swung to kick appellant to apprehend him, and they both fell. Ohm hurt his shoulder and arm in the fall. Ohm was later diagnosed with a fractured humerus at the shoulder. Appellant got up again and ran into the drainage tunnel under the street. Ohm ran after appellant, and they both slipped and fell again. Ohm realized that his left arm was not working properly and that he was having trouble getting up, so he used the taser twice on appellant. As Ohm physically held appellant down as best he could without full use of his injured arm, he observed the butt of a gun coming out of appellant's pocket. The officer stated that appellant had a hand on the gun and was pulling it out when he (Ohm) wrestled or broke the gun from appellant's hand and tossed it farther down the canal. Ohm stated that he was not going to give appellant the chance to shoot him and that if he could have reached his own gun, he would have. Ohm testified that the gun was accessible to appellant, definitely could have been used, and any discharge absolutely could have hit him, even while it was still in appellant's pocket. Ohm believed that appellant could have and intended to shoot him, although appellant did not verbally threaten Ohm.

After appellant was apprehended, Ohm told appellant, "You almost killed me. I think you were going to kill me. . . . that's a good way to get killed, you know, there is a gun."

SLIP OPINION

X-rays confirmed Ohm's broken bone, and he also had bruising and swelling on his arm, ribs, and shoulder. At the time of the hearing, Ohm was still having arm pain and was unable to use it fully; he had returned to light-duty work. On this evidence, the trial judge found that appellant had committed aggravated assault, and this appeal followed.

Appellant asserts that two cases support reversal. Appellant likens this case to the situations in *Wooten v. State*, 32 Ark. App. 198, 799 S.W.2d 560 (1990) and *Swaim v. State*, 78 Ark. App. 176, 79 S.W.3d 853 (2002), where we reversed assault convictions. In *Wooten*, an officer pulled into a parking lot and saw Wooten reach into his right pants pocket and start backing away, hiding behind a parked car. The officer got out of his car with his own pistol drawn and ordered Wooten several times to stop and get on the ground. Wooten continued to back away and appeared to Officer Puckett to be trying to pull something out of his pocket that was stuck. The officer testified that when Wooten had backed up behind a parked car, he pulled his hand out of his pocket, and the officer saw that he was holding a small handgun. Puckett testified that Wooten dropped to his knees behind the car and that he could see him lifting his head up slightly as if to try to locate the officer's position. In that case, we recognized that our aggravated-assault statute is not based on the use of a deadly weapon or the creation of fear, but requires the creation of a substantial danger of death or serious physical injury to another person. We held in *Wooten* that, based on the evidence that appellant did not point the gun at the officer or expressly threaten the officer, the appellant was not guilty of aggravated assault.

SLIP OPINION

In *Swaim*, appellant got into the passenger side of a getaway car and was pursued by the police. As the vehicle that appellant was in approached the roadblock, the security chief drew his weapon and ordered the occupants of the vehicle to stop and step out of the vehicle. The driver continued at a slow pace, and during that episode, appellant displayed a chrome-plated revolver but did not point it at the security chief or expressly make a threat. The security officer had his weapon drawn as appellant's was "coming up," but appellant apparently decided to drop down his weapon. The aggravated-assault conviction was reversed.

In those cases, the officers were already armed and prepared to defend themselves, and there was physical distance between Wooten and Swaim and the officers. Here, however, appellant's flight led them to a wet, slippery concrete drainage canal that was poorly lit. Appellant had his hand on a gun in his pocket as he was continuing to resist arrest and physically tussling with the officer trying to subdue him. Appellant persisted in the struggle against an officer who was already suffering from a significant arm injury. The officer did not draw his weapon, and his injury made him vulnerable to the potential of being shot in the process of trying to wrest the gun from appellant's hand and take him into custody.

The aggravated-assault statute is not based on the use of a deadly weapon or the creation of fear, but requires the creation of a substantial danger of death or serious physical injury to another person. *Wooten*, *supra*. Even so, a gun can inflict harm when used as a bludgeon. *Harris v. State*, 72 Ark. App. 227, 35 S.W.3d 819 (2000). The statute does not

SLIP OPINION

require that a verbal threat be used; instead, it is the appellant's overall conduct that must be examined. The fact-finder does not and need not view each fact in isolation, but rather considers the evidence as a whole. *Williams v. State*, 96 Ark. App. 277, 241 S.W.3d 290 (2006). Viewing the evidence in the light most favorable to the State, we hold that there was sufficient evidence from which the trial court could find that appellant's conduct created a substantial danger of death or serious physical injury to Ohm.

Affirmed.

GLADWIN and HARRISON, JJ., agree.

*Dusti Standridge*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Valerie Glover Fortner*, Ass't Att'y Gen., and *Bryan Foster*, Law Student Admitted to Practice Pursuant to Rule XV of the Rules Governing Admission to the Bar of the Supreme Court under the Supervision of *Darnisa Evans Johnson*, Deputy Att'y Gen., for appellee.