Cite as 2019 Ark. App. 471

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CR-19-275

| | | |
|---|---|---|
| B.T.<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | | **Opinion Delivered:** October 23, 2019<br><br>APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT<br>[NO. 16JJV-18-379]<br><br><br>HONORABLE BARBARA HALSEY, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

BT appeals the circuit court's determination of delinquency and challenges the sufficiency of the evidence that he committed residential burglary, theft of a firearm more than $2500, theft of property, and possession of a handgun. We affirm.

### I. *Relevant Facts*

On October 15, 2018, the State filed a petition alleging that BT was a delinquent juvenile and asserted that on October 9, BT committed the following offenses: (1) residential burglary, Ark. Code Ann. § 5-39-201 (Repl. 2013); (2) theft of a firearm more than $2500, Ark Code Ann. § 5-36-103(b)(2)(C); (3) minor in possession of a handgun, Ark. Code Ann. § 5-73-119 (Repl. 2016); and (4) theft of property, Ark. Code Ann. § 5-36-103.

At the hearing, captain Keith Carter and fire marshal Jason Wills of the Jonesboro Fire Department testified. Wills explained that he and Carter were investigating an arson that occurred on October 8, 2018, on Harrisburg Road in Jonesboro. Wills testified that on October 9, at around 1:45 p.m. while he and Carter investigating the arson, he saw BT and two other boys, GW and JS, walking south on Harrisburg Road. Wills and Captain Carter got in the fire department vehicle and drove toward the boys to speak to them, but boys had disappeared. Wills testified that they drove up and down Harrisburg Road and that Carter thought he saw someone standing on the back deck of a home immediately south of the home where the arson had occurred. Wills stated that around 2:35 p.m., the boys reappeared, and he observed JS and GW walking north on Harrisburg Road, and BT riding a hoverboard heading the same direction. Wills testified that JS was carrying a blue duffle bag, and GW was walking away from the other two. Wills recalled that when he and Carter first saw the boys, they "did not have anything on them." Wills testified that they caught up to BT in a nearby church parking lot and spoke to him about why he was not in school and asked him "general questions." While they were talking to BT, Wills and Carter noticed JS hiding behind a structure with the blue duffle bag open beside him. JS was instructed to put his hands on the wall, and Wills patted him down. Carter saw that the blue duffle bag was unzipped and that there were "multiple pistols" in it. Wills handcuffed JS, and by this time BT had walked away. Wills testified that he had not told BT he was not free to leave and that their conversation had been cut short because he had turned his attention to JS.

Detective Joe Robinson with the Jonesboro Police Department testified that the fire marshals radioed in that they were looking for three juveniles possibly connected with an arson and a burglary they were investigating. The fire marshal reported that the juveniles possessed a duffle bag with two handguns, two or three tablets, a gaming system, ammunition, and other items. Robinson stated that he determined the property had come from Silas Orbison's house on Rosewood Circle and that the property line of Orbison's home and the house where the arson occurred are adjoining. The Orbisons reported that several long guns and a hoverboard had been taken, as well as property matching the description of the contents of the duffle bag. The long guns were found in the wooded area behind the Orbison's house underneath some sticks and leaves. Robinson testified that on October 10 or 11, he questioned BT at his home. BT denied knowing anything about the burglary or the arson, and he denied running away from the Orbison house on a hoverboard. Robinson explained that he did not search BT at the time he questioned him, though a probation search was later performed. Robinson explained that he watched the Harp's Food Store ("Harp's") surveillance video that shows all three boys walking together behind the store at 1:44 p.m.; BT riding a hoverboard in the parking lot at 2:30 and at 2:40 p.m.; and BT, JS, and GW walking together along Harrisburg Road toward the Orbison residence.

Silas Orbison testified that around October 9, several items were taken from his home, including three iPads, two pistols, ammunition, five or six long guns, a hoverboard and charger, a shotgun, a camera, and various other things. Orbison stated that he had not given anyone permission to be inside his home that day and that while he was picking his

3

children up from school, a neighbor called and told him that police were in the neighborhood near his home. Orbison returned to find that his home had been burgled. Orbison testified that the police returned most of the items except for the hoverboard and charger.

BT recalled that on October 9, he skipped his last class of the day and went to McDonald's where he saw GW and JS. They decided to go look at the home that had burned. Afterward, BT testified, GW and JS went off together, and he walked over by the church. BT stated that neither JS nor GW possessed a duffle bag at that point. Five or ten minutes later, JS called BT and told him to meet back up with them in the church parking lot that was across the street from the burned home. GW had a hoverboard, which he let BT borrow, and JS was carrying a duffle bag. BT explained that around 2:30, as he was riding the hoverboard, Wills and Carter pulled up alongside him in their vehicle and asked him where he went to school, his name, and where he lived. When Wills finished questioning BT, BT proceeded toward Harp's where he saw GW, which was around 3:00 p.m. GW told him that JS had been arrested and that they had broken into a home together. BT testified that he returned the hoverboard to GW and walked home. BT stated that he had never been in the Orbison's house, that he did not act as a lookout or assist JS or GW in taking the items from the house, and that he never possessed a gun. Despite video surveillance confirming BT's presence in the vicinity at 1:44 p.m., BT disagreed with Wills's statement that he saw BT at 1:45 p.m., and he asserted that Wills could have seen him in the area at 2:10 p.m. but not before.

4

Defense counsel moved to dismiss the charge of residential burglary, arguing that the State presented no evidence that BT had remained in a building unlawfully. On the theft-of-property charge, counsel asserted that the State presented no evidence that BT had taken the hoverboard or knew that it was stolen. Counsel contended that the State offered no proof that BT had ever had a handgun in his possession at any time. Defense counsel argued that there was no proof BT was ever in Orbison's home, that he removed any property from the home, or that he was responsible for the theft of the items from the home. The court denied the motions and found that BT's testimony lacked credibility.

The circuit court found that BT had committed all four offenses, and he was adjudicated delinquent. The circuit court placed BT in the custody of the Division of Youth Services and recommended that BT undergo substance-abuse and mental–health treatment and receive educational services. BT timely filed a notice of appeal and disputes the sufficiency of the evidence supporting his adjudication of delinquency.

## II. *Standard of Review*

While a delinquency adjudication is not a criminal conviction, it is based on an allegation by the State that the juvenile has committed a certain crime. *A.D. v. State*, 2015 Ark. App. 35, 453 S.W.3d 696. Our standard of review is the same as it would be in a criminal case; that is, whether the adjudication is supported by substantial evidence. *Id*. Substantial evidence is evidence, direct or circumstantial, that is of sufficient force and character to compel a conclusion one way or the other, without speculation or conjecture. *Id*. In considering the evidence presented below, we will not weigh the evidence or assess the credibility of witnesses, as those are questions for the fact-finder.

5

*Id.* The evidence is viewed in the light most favorable to the State. *A.W. v. State*, 2017 Ark. App. 34, 510 S.W.3d 811.

### III. *Discussion*

### A. Residential Burglary

For his first point on appeal, BT asserts that there was no direct evidence that he entered Orbison's house and that the circumstantial evidence was insufficient to support the State's contention that he entered the home. We disagree.

A person commits residential burglary if he or she enters, or remains unlawfully inside, a residential occupiable structure of another person with the purpose of committing (inside the structure) any offense punishable by imprisonment. Ark. Code Ann. § 5-39-201(a)(1). The offense intended must be identified and is an element of the charge of burglary. *Williams v. State*, 2018 Ark. App. 349, at 7, 553 S.W.3d 753, 757. Circumstantial evidence may provide the basis for a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable explanation of the crime. *Block v. State*, 2015 Ark. App. 83, at 5, 455 S.W.3d 336, 340. Whether the circumstantial evidence would support any other theory is for the fact-finder to decide. *Id.* In reviewing a juvenile-delinquency case, we look at the record in the light most favorable to the State to determine whether there is substantial evidence to support the conviction. *J.R. v. State*, 73 Ark. App. 194, 40 S.W.3d 342 (2001). Substantial evidence is evidence of sufficient force and character that will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Wilson v. State*, 2017 Ark. 217, 521 S.W.3d 123.

Possession of recently stolen property is prima facie evidence of guilt of burglary of the party in whose possession the property is found, unless it is satisfactorily accounted for to the fact-finder. *Owens v. State*, 2017 Ark. App. 353, 525 S.W.3d 480. The element of criminal intent can seldom be proved by direct evidence and must be inferred from the facts and circumstances of the crime. *Id*.

BT contends that he explained that GW had allowed him to borrow the hoverboard; thus, the circuit court's determination that he is guilty of residential burglary is inconsistent with the reasonable conclusion that BT came to possess the hoverboard without entering Orbison's house. His argument fails. In considering whether the evidence supports a juvenile-delinquency adjudication, this court will not weigh the evidence or assess the credibility of witnesses, as those are questions for the fact-finder. *J.N.A. v. State*, 2017 Ark. App. 502, 532 S.W.3d 582.

Orbison testified that a hoverboard was stolen from his home, and he had not given anyone permission to be inside his home on the day of the burglary. BT admitted that he possessed the stolen hoverboard. In light of Orbison's and BT's testimony we cannot say that the circuit court resorted to speculation or conjecture in reaching its decision, and we affirm.

### B. Theft of Property

BT also argues that the circuit court's finding that he is guilty of theft of property is not based on sufficient evidence. BT asserts that the State did not offer evidence connecting him to the blue duffle bag containing the guns and that there was no evidence of conspiracy or accomplice liability that would make him an accomplice to theft of any property. Also, BT asserts that there was no evidence that the hoverboard he was riding was Orbison's.

7

First, we address the preliminary issue regarding the sufficiency of BT's motion to dismiss on the theft-of-property charge. Below, BT did not specifically challenge the sufficiency of the evidence that the hoverboard he was riding was the hoverboard stolen from Orbison's home. Rule 33.1(b) of the Arkansas Rules of Criminal Procedure requires that a directed-verdict motion (or in this case, a motion to dismiss) based on insufficient evidence must specify in what manner the evidence is deficient; a motion merely stating that the evidence is insufficient does not preserve issues concerning a specific deficiency—such as insufficient proof on the elements of the offense—for appellate review. Rule 33.1 is to be strictly construed. *Pinell v. State*, 364 Ark. 353, 219 S.W.3d 168 (2005). The reasoning behind Rule 33.1 "is that when specific grounds are stated and the absent proof is pinpointed, the circuit court can either grant the motion, or, if justice requires, allow the State to reopen its case and supply the missing proof." *Id*. at 357, 219 S.W.3d at 171. Another reason the motion must be specific is because the appellate courts cannot decide an issue for the first time on appeal. *Id*. Here, counsel did not dispute the sufficiency of the evidence that the hoverboard BT possessed belonged to Orbison; thus, we are barred from review of the sufficiency of the evidence regarding Orbison's ownership of the hoverboard.

We now turn to the court's determination that the evidence is sufficient to support a finding of guilt on the theft-of-property charge. A person commits theft of property if he or she knowingly obtains the property of another person by deception or by threat with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-103(a)(2). As discussed above, BT admitted that he had possession of the hoverboard, and though he denied he had stolen it, he testified that eventually JS told him the hoverboard had been

8

stolen. The fact-finder was not required to believe BT's statement about how he had acquired the property. *See Owens v. State*, 2017 Ark. App. 353, at 6, 525 S.W.3d 480, 484. Considering all the facts and circumstances, the circuit court, without resorting to speculation or conjecture, could have reasonably concluded that BT knowingly took items belonging to Orbison.

C. Theft of a Firearm More Than $2500

Theft of property is a Class C felony if the property is a firearm valued at $2500 or more. Ark. Code Ann. § 5-36-103(b)(2)(C). BT asserts that there was no evidence presented as to the value of the firearms stolen and that there was no evidence that he stole the firearms because the blue duffle bag was being carried by JS.

In his motion to dismiss, BT did not object to the sufficiency of the evidence establishing the value of the firearms. If counsel does not state specific grounds and pinpoint the absent proof, the issue is not preserved for appeal. *See Pinell, supra.* Moreover, actual possession of the firearm is not required to prove theft of the firearm, and we affirm.

As stated above, a person commits theft of property when he or she knowingly obtains the property of another person by deception or by threat with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-103(a)(2). A person may be held criminally liable for the conduct of another person if the person is an accomplice with another person in the commission of an offense. Ark. Code Ann. § 5-2-402(2) (Repl. 2013). The presence of an accused in the proximity of a crime, opportunity, and association with a person—or persons—involved in a crime in a manner suggestive of joint participation are relevant factors in determining the connection of an accomplice with the crime. *A.D. v.*

9

*State*, 2015 Ark. App. 35, at 4, 453 S.W.3d 696, 698. When two or more persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both; one cannot disclaim accomplice liability simply because he did not personally take part in every act that made up the crime as a whole. *Id*. Mere presence at the scene of a crime is not enough to make a person an accomplice. *Id*. Except in extraordinary cases, even presence at the scene of the crime combined with actual knowledge that a crime is being committed is not sufficient to make a person an accomplice in the absence of any purpose to further the accomplishment of the offense. *Id*.

Sufficient evidence at the hearing established BT's participation in the theft of Orbison's five long guns and two handguns. The primary evidence supporting the circuit court's determination that BT jointly participated in the theft of the firearms is his possession and use of another stolen item—the hoverboard. Having control over the hoverboard that had been stolen at the same time the guns were stolen suggests that BT was a part of the scheme. Also, BT was riding the hoverboard alongside JS, who was carrying the unzipped duffle bag with the handguns visible inside it. Here, the circuit court's determination that BT participated in the theft of the firearms is supported by his possession of the other stolen property and by his close association with JS, who openly possessed the stolen guns. The circuit court was free to believe all or part of BT's testimony regarding his participation in the theft and resolve questions regarding inconsistent evidence. *See Navarro v. State*, 371 Ark. 179, 187, 264 S.W.3d 530, 536 (2007). The circuit court did not err in determining that the evidence was sufficient to find that BT committed theft of the firearms.

10

D. Minor in Possession of a Handgun

BT contends that the circuit court erred by denying his motion for dismissal regarding the charge of minor in possession of a handgun. We disagree. As we set forth above, the evidence is sufficient to establish that BT was an accomplice to the theft of the firearms in the duffle bag carried by JS. Based on his criminal liability as an accomplice, we may also affirm the court's determination that BT was a minor illegally in possession of a handgun. BT's citation to *Knight v. State*, 51 Ark. App. 60, 908 S.W2d 664 (1995), is misplaced, as that case concerns constructive possession, which is not an issue here, and *Knight* does not address the issue of accomplice liability.

Affirmed.

SWITZER and VAUGHT, JJ., agree.

*Terry Goodwin Jones*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.