Cite as 2025 Ark. App. 571

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CR-24-741

| | | |
|---|---|---|
| MINOR CHILD | | Opinion Delivered December 3, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04JV-23-792] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE THOMAS SMITH, JUDGE |
| | | AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Minor Child (MC) appeals the Benton County Circuit Court order adjudicating him a delinquent on findings of aggravated assault, disorderly conduct, and obstructing governmental operations. On appeal, MC argues that the State presented insufficient evidence that he committed aggravated assault. We affirm.

On November 6, 2023, the State petitioned for delinquency against MC, alleging that he was fourteen years old and had committed aggravated assault, disorderly conduct, and obstruction of governmental operations on November 5, 2023. Specifically, the State asserted that MC pulled a knife on Spencer Kirkpatrick and that he impaired officers' investigation of the incident.

The court held an adjudication hearing on July 10, 2024. At the hearing, Kirkpatrick, who was thirty-one years old, testified that he and his friends were playing basketball at a

park when MC and other minors arrived. He explained that after MC arrived at the park, his friend, Tyler Spears, noticed that his vape pipe was missing from his backpack. Kirkpatrick stated that MC had been close to Spears's backpack and that he believed MC had taken the vape. He explained that he confronted MC about stealing Spears's vape and that MC pushed him and then walked backwards and pulled a knife. Kirkpatrick explained that after MC pulled the knife, they separated, and he resumed playing basketball with his friends. He stated that he thought MC had left the park.

Kirkpatrick explained, however, that MC returned to the basketball court about three to six minutes later with more friends and that they approached him as he backed away. He noted that there were about five to eight other minors with MC. He stated that MC was holding a knife, and another minor had a second knife. He explained that they surrounded him and continued to approach him with knives in their hands until the police arrived. He also stated there was not much distance between him and MC. Kirkpatrick testified that when the police arrived, MC and the minors resisted the police officers. He also stated that the scene was "chaos" and that he was "in a state of shock."

During cross-examination, MC introduced a video recording of the first encounter when MC pulled a knife on Kirkpatrick. The video shows MC backing away from Kirkpatrick and then pulling out a knife.

Officer Samuel Jiminez testified that he responded to a 911 call concerning juveniles fighting with a knife. He stated that when he arrived, he saw "a group of people pushing into another group of people" and then a group of minors began to run away when he exited his

2

patrol car. He stated that he drew his handgun and yelled at the minors to stop. He stated that MC stopped, and when he asked MC about a knife, MC responded he had dropped it. Officer Jiminez explained that he then put MC in handcuffs and asked him to sit down on a park bench so that he could investigate the situation. He explained that MC refused to remain seated. He testified that when other officers arrived, he was able to detain MC and the other minors. The State introduced a recording of the incident from Officer Jiminez's body camera.

At the conclusion of the State's case, MC moved to dismiss the petition as to the aggravated-assault charge. He argued that the State failed to prove that he created a substantial danger of death or physical injury. He argued that the evidence showed that he merely flashed a knife, and he asserted that there was no evidence that he threatened to kill or tried to stab anyone. He also pointed out that "there was always some distance." The court denied the motion. The court found that MC committed disorderly conduct and obstructing governmental operations, but it deferred a finding on aggravated assault in order for the parties to submit briefs.

On July 24, the court reconvened and concluded that MC had committed aggravated assault. The court determined that the first encounter when MC pulled the knife did not constitute aggravated assault, but the court found that MC committed aggravated assault when he returned to the basketball court and again pulled the knife on Kirkpatrick. The court sentenced MC to probation. MC appealed the adjudication to this court, and he argues that the circuit court erred by finding that he committed aggravated assault.

While a delinquency adjudication is not a criminal conviction, it is based on an allegation by the State that the juvenile has committed a certain crime. *A.D. v. State*, 2015 Ark. App. 35, 453 S.W.3d 696. Our standard of review is the same as it would be in a criminal case, that is, whether the adjudication is supported by substantial evidence. *Id.* Substantial evidence is evidence, direct or circumstantial, that is of sufficient force and character to compel a conclusion one way or the other without speculation or conjecture. *Id.* In considering the evidence presented below, we will not weigh the evidence or assess the credibility of witnesses because those are questions for the fact-finder. *Id.* The evidence is viewed in the light most favorable to the State. *A.W. v. State*, 2017 Ark. App. 34, 510 S.W.3d 811.

In this case, MC argues that the State presented insufficient evidence that he created a substantial danger of death or physical injury. He asserts that during the second encounter, he did not threaten Spencer and only flashed the knife at him. He further argues that he and the other minors were not close to Spencer. MC likens his case to *Wooten v. State*, 32 Ark. App. 198, 799 S.W.2d 560 (1999), and *Swaim v. State*, 78 Ark. App. 176, 79 S.W.3d 853 (2002).

A person commits aggravated assault when, under circumstances manifesting extreme indifference to the value of human life, the person purposely engages in conduct that creates a substantial danger of death or serious physical injury to another person. *See* Ark. Code Ann. § 5-13-204(a)(1) (Repl. 2024). The aggravated-assault statute does not require that a weapon actually be used or that the victim actually fear for his safety but requires a substantial

danger of death or the injury to another person. *Schwede v. State*, 49 Ark. App. 87, 896 S.W.2d 454 (1995) (citing *Wooten*, 32 Ark. App. at 201, 799 S.W.2d at 562). We have stated that our statute "does not require that a verbal threat be used; instead, it is the appellant's overall conduct that must be examined." *J.N.A. v. State*, 2017 Ark. App. 502, at 9–10, 532 S.W.3d 582, 589. The fact-finder does not and need not view each fact in isolation but rather considers the evidence as a whole. *Id.*

In *Wooten*, we held that because the appellant did not point the gun at the officer or expressly threaten the officer, the appellant was not guilty of aggravated assault. In *Swaim*, we held that where the appellant displayed a firearm but did not point it at the officer or expressly make a threat and then dropped the weapon, the appellant was not guilty of aggravated assault.

Here, viewing the evidence in the light most favorable to the State, we hold that this case is unlike either *Wooten* or *Swaim* and that the circuit court did not err in finding that MC committed aggravated assault. The evidence showed that after pulling a knife on Kirkpatrick during the first encounter, MC returned to the park, surrounded Kirkpatrick with other acquaintances, and approached him while visibly holding the knife in his hand. Given these circumstances, we hold that there was sufficient evidence from which the circuit court could find that MC's conduct created a substantial danger of death or serious physical injury to Kirkpatrick. We therefore affirm the adjudication order.

Affirmed.

THYER and MURPHY, JJ., agree.

5

*Sharon Kiel*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Dalton Cook*, Ass't Att'y Gen., for appellee.